**UNITED STATES, Appellee,**

v.

**Kenneth R. COOK, Lance Corporal, U.S. Marine Corps, Appellant.**

No. 97–0323.
Crim.App. No. 95–00385.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 2, 1997.

Decided April 7, 1998.

For Appellant: *Lieutenant Albert L. DiGiulio*, JAGC, USNR (argued); *Lieutenant E. Rubiella*, JAGC, USNR (on brief); *Major Scott B. Jack*, USMC.

For Appellee: *Lieutenant J. Russell McFarlane*, JAGC, USN (argued); *Colonel Charles Wm. Dorman*, USMC, and *Lieuten-*

*ant Randy S. Kravis*, JAGC, USNR (on brief).

## Opinion of the Court

CRAWFORD, Judge:

Pursuant to mixed pleas, appellant was convicted of the unpremeditated murder of his 14–month–old natural daughter, aggravated assault (5 specifications), assault on a child (2 specifications), and false swearing, in violation of Articles 118, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 918, 928, and 934, respectively. The convening authority approved the sentence of a dishonorable discharge, confinement for life, total forfeitures, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and the sentence.

We granted review of the following issue: WHETHER THE LOWER COURT ERRED WHEN IT RULED THAT APPELLANT RECEIVED A FAIR TRIAL WHEN TRIAL COUNSEL IMPROPERLY COMMENTED ON APPELLANT'S DEMEANOR IN COURT DURING THE GOVERNMENT'S CLOSING ARGUMENT.

We hold that the defense waived any error by not objecting to the prosecution's argument and by expressly declining to accept an invitation for a curative instruction. We further hold that the prosecution's comments, when considered in light of the whole trial, did not rise to the level of plain error.

## FACTS

In response to a defense expert witness who testified on appellant's sanity, the prosecution made the following argument to the members:

You have had more observation of this accused sitting right here over the course of the last two weeks than Dr. Hocter had. You've been able to gauge his response. You've been able to watch him when a witness is talking about an aspect of his daughter's death as he yawns,[1] relaxes. He's really into this trial. Using your own

knowledge of the ways of the world and human mankind, what does that mean to you? You're able to perceive him. You are better than Dr. Hocter as to an opinion of what the accused intended. That's your job. That's what you are here for.

There was no defense objection. On three occasions, the defense rejected the judge's offer to instruct the members on appellant's right not to testify.

Appellate defense counsel now contends that the prosecutor's argument improperly put appellant's character in evidence; violated his Fifth Amendment right not to testify by commenting on his failure to testify; and violated his Fifth Amendment rights by allowing members to convict on evidence not introduced at trial. The defense argues that any error must be found harmless beyond a reasonable doubt and rejects the government argument to apply a plain error analysis.

## DISCUSSION

A significant part of communication is nonverbal. *See generally* J. Kestler, *Questioning Techniques and Tactics* §§ 3.34–3.39 at 160–67 (2d ed.1992). Nonverbal communications encompass paralinguistics, which include aspects of speech, and kinesics, which involve body movements. Nonverbal communication may occur outside the courtroom as well as on and off the witness stand. *Id.* Interpretations of nonverbal communication are fallible and idiosyncratic.

■ Here, the prosecutor's comment on appellant's action while at counsel table raises important constitutional and evidentiary issues. The Fifth Amendment to the Constitution guarantees the defendant the right not to be compelled to be a witness against himself. The prosecution may not comment on a defendant's silence. *Compare Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), *with United States v. Robinson*, 485 U.S. 25, 32, 108 S.Ct. 864, 868–69, 99 L.Ed.2d 23 (1988).

---

1. The record did not reflect this conduct. Unless demeanor evidence is noted as part of the record, it will not appear in the trial transcript.

Eventually, when trials are videotaped, this may not be the case.

▮ Fifth Amendment protection extends to testimonial communications. Certain acts are considered to be non-testimonial communications and are unprotected, including the following: an accused's production of a handwriting exemplar, *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); requiring a suspect to speak for voice identification, *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); requiring a suspect to don or remove clothing, *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); or silence at the time of arrest when there have been rights warnings if the defendant testifies at trial, *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982); *see also United States v. Oxfort*, 44 MJ 337, 339–40 (1996). Also, some courts have permitted the prosecution to argue, over objection, that the non-testifying defendant was tight-lipped and refused to show identifying teeth. *See, e.g., State v. Ball*, 591 S.W.2d 715 (Mo.App.1979); *People v. Williams*, 42 Mich.App. 278, 201 N.W.2d 286 (1972).

In *Williams*, the robbery victim testified that the robber had bad teeth. The defendant did not testify at trial. Even so, the prosecutor was permitted to argue, over objection, that the defendant did not show his bad front teeth. The prosecutor asked, "[H]ave you noticed Ladies and Gentlemen at anytime whether or not Mr. Williams has shown to you his front teeth?" He also stated, "Throughout this trial, have any of you seen him smile, have you seen him grin, have you in fact seen him open his mouth?" The court stated that it did not "read the prosecutor's argument as a thinly-veiled comment on the defendant's failure to testify. We take it at face value, as a comment on the defendant's failure to show by exhibiting his front teeth that he could not have been the man described by the witness as the man who perpetrated the robbery." The prosecution was permitted to argue that the jury could draw the negative inference from the fact that the defendant did not voluntarily show his teeth to the jury without violating the defendant's Fifth Amendment rights. *Id.* at 287–88.

Dean Wigmore championed the view that demeanor off the witness stand and in the courtroom is admissible evidence. 2 Wigmore, *Evidence* § 274(2) at 119–20 (Chadbourne rev.1979). He dismissed as fiction the belief that the jurors can be "mentally blind" to demeanor off the stand. *Id.* If the defendant testified, the straightforward rationale for the argument would be the impact of the defendant's demeanor on credibility.

Regardless of whether the defendant testifies, there are instances when the nontestimonial acts of the defendant may be admitted. Examples of nontestimonial acts held admissible by other courts include when there have been threats or intimidation of witnesses, *United States v. Gatto*, 995 F.2d 449 (3d Cir.1993); making a hand gesture in the shape of a gun, *United States v. Mickens*, 926 F.2d 1323 (2d Cir.1991); and mouthing the words "you're dead," *United States v. Maddox*, 944 F.2d 1223 (6th Cir.1991). Such acts may be admissible to show the defendant's consciousness of guilt. Therefore, those nontestimonial acts are subject to comment. In these instances, the evidence is relevant under Fed.R.Evid. 404(b), which is virtually identical to Mil.R.Evid. 404(b), Manual for Courts–Martial, United States (1995 ed.).

▮ Irrelevant evidence is not admissible. Thus, it would be improper to introduce evidence that the defendant laughed during the testimony about other violent threats he had made. *United States v. Schuler*, 813 F.2d 978 (9th Cir.1987)(holding evidence that defendant laughed during testimony that he threatened the life of the President was inadmissible). Nor may the prosecutor comment about nontestimonial acts of the defendant such as consulting with his lawyer during the trial. *United States v. Carroll*, 678 F.2d 1208 (4th Cir.1982). A prosecutor may not comment during closing argument that the defendant moved his leg up and down during the trial demonstrating nervousness. *United States v. Pearson*, 746 F.2d 787 (11th Cir. 1984); *but see Bishop v. Wainwright*, 511 F.2d 664 (5th Cir.1975)(holding it was permissible to refer to defendant's expressionless courtroom demeanor); *United States v.*

*Robinson,* 523 F.Supp. 1006 (E.D.N.Y.1981) (holding it was permissible to refer to defendant's indifferent reaction when informed that money in his wallet was counterfeit).

■ Likewise, yawning in the courtroom is not relevant to the question of guilt or innocence. However, trial defense counsel did not object. Defense counsel could have objected that the information was not relevant; the yawning did not occur; the prosecutor's comment pressured appellant to reply; or the remarks were a comment on appellant's right to silence. As to the latter two, the judge offered a curative instruction which would have satisfied those objections.

We hold that trial counsel's remarks did not constitute plain error. The remarks by the prosecutor comprised only a short paragraph in an argument that consisted of 39 verbatim pages of the record of trial. The evidence at trial revealed that appellant is 6 feet, 3 inches tall and experienced in the martial arts. His daughter was an 18–pound, 14–month–old infant. The evidence established that he battered his daughter, with blows to the head, face, and body, with such force that the imprint of a ring he wore was found on the victim's head. At one point, appellant squeezed his daughter's head for 15 seconds and then "whipped her body out behind her" while holding her head with both hands. This resulted in fractures of her scalp, causing inflammation and hemorrhaging of the brain, as well as blood loss through her nose. Appellant knew of the consequences of these actions because he previously had been counseled by the first sergeant for child abuse.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges GIERKE and EFFRON concur.

SULLIVAN, Judge (concurring in part and in the result):

The majority and I walk the same road, observe the same scenery, and arrive together at the same destination. It is only at the end do we diverge. I enter the city of affirmance by the gate marked harmless error and walk down the street of intent. The majority stands at the city limits and declares they have arrived.

To start with, I completely agree with the majority on the law to the effect that a prosecutor may not comment in his or her closing argument about the courtroom demeanor of an accused who does not testify. *See, e.g., United States v. Schuler,* 813 F.2d 978, 980 (9th Cir.1987) (defendant laughing in courtroom); *United States v. Carroll,* 678 F.2d 1208, 1209–10 (4th Cir.1982) (defendant examining a court exhibit of a photograph of a crime scene and appearing to explain photograph to his lawyer). Thus, in the case at bar, the prosecution's remarks about appellant's yawning during a witness's description of his daughter's death were improper comments.

However, this error was harmless and not substantial in light of the overwhelming evidence of appellant's guilt. Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a). How one views the evidence is critical. Appellant's defense was that he did not intend to harm his daughter. Intent was key. When I look at the evidence, I focus on intent. The evidence showed that Lance Corporal Cook had the intent to kill or cause great bodily injury to his 14–month–old daughter. The pictures admitted as exhibits at the trial showed the impact of severe blows to her head, face, and body. The evidence showed that Cook (6′3″ tall), experienced in Tae Kwan Do (a martial art), battered his daughter (14 pounds) repeatedly. The jury saw evidence that Cook's distinctive ring left a similar imprint found on his daughter's head. The jury heard evidence that Cook's daughter suffered massive internal bleeding, tears in her kidneys, bowels and mesentery, distention of her stomach, and two broken ribs. There was evidence that these internal injuries were sufficient to cause death. In addition, the jury heard testimony that appellant squeezed his daughter's head for 15 seconds and then "whipped her body out behind her" while holding her

head with both hands. Pros. Exh. 39. The jury heard medical evidence that this resulted in fractures of his daughter's skull, causing inflammation and hemorrhaging of the brain as well as blood loss through her nose. (R. 946)

The above evidence,* plus the evidence of Cook's First Sergeant's prior warnings about previous beating of his daughter, showed in abundant measure to the jury that Cook *intended* to kill or cause great bodily harm to his daughter. In light of this overwhelming evidence of guilt, the trial counsel's improper comment on "yawning" could not have had any effect on the jury's decision. I am convinced that the error here was harmless under Article 59(a). In answering the granted issue, I say Lance Corporal Cook did receive a fair trial.

---

* The Government's Final Brief at 7–8 was very helpful in summarizing the evidence for the prosecution at trial. Good briefs are important in our Court.