UNITED STATES, Appellee

v.

Timothy J. STATON, Staff Sergeant
U.S. Air Force, Appellant

No. 10-0237

Crim. App. No. 37356

United States Court of Appeals for the Armed Forces

Argued October 5, 2010

Decided December 1, 2010

BAKER, J., delivered the opinion of the Court, in which ERDMANN,
STUCKY and RYAN, JJ., joined.  EFFRON, C.J., filed a separate
opinion concurring in the result.

Counsel

For Appellant:  William E. Cassara, Esq. (argued); Captain
Andrew J. Unsicker (on brief); Major Michael A. Burnat and Major
Shannon A. Bennett.

For Appellee:  Captain Joseph J. Kubler (argued); Gerald Bruce,
Esq. (on brief); Colonel Don M. Christensen and Lieutenant
Colonel Jeremy S. Weber.

Military Judge:  Grant L. Kratz

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge BAKER delivered the opinion of the Court.

A general court-martial composed of members convicted Appellant, contrary to his pleas, of eight specifications of assault consummated by battery upon a child under sixteen years, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2006). The adjudged and approved sentence included confinement for three years, reduction to pay grade E-1, and a bad-conduct discharge.

On review, the United States Air Force Court of Criminal Appeals affirmed.[1]

We granted review of the following issue:

> WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION IN ADMITTING EVIDENCE THAT APPELLANT MAY HAVE ATTEMPTED TO KILL OR INJURE THE ORIGINAL TRIAL COUNSEL.

## BACKGROUND

Appellant and Kari Staton were in a relationship for five years and married for four. Some time after they were married Kari Staton's six-year-old son from a previous marriage, CJ, came to live with them. In Kari Staton's opinion, CJ was not "an easy child to deal with." Appellant would punish CJ when he got into trouble. About six months after CJ moved in, the punishment became physical.

---

[1] United States v. Staton, 68 M.J. 569, 575 (A.F. Ct. Crim. App. 2009).

Each of the specifications of Appellant's charge correlate to different implements Appellant used on CJ in what he termed physical "discipline," ranging from a fist, to a flyswatter, a golf club, a wire coat hanger, a weight-lifting belt, a leather belt, and a battle dress uniform belt. In July 2007, Appellant grabbed CJ (then eleven years old) by the throat, raised him several inches off the ground and slammed his head hard enough to leave a "groove" in the wall.

On August 2, 2007, Appellant stated to a mental health therapist, Calyn Crow, that he had on many occasions struck CJ with a belt and had recently banged his head into a wall. The next day, Lynn Merrit-Ford, the program director of a local social services department, left a voice mail to inform Appellant that an investigation was underway.

Captain (Capt) Stephanie Gilmore was the Chief of Military Justice at the Space Wing legal office at Buckley Air Force Base, Colorado. She had represented the Government at two Article 32, UCMJ, 10 U.S.C. § 832 (2006), hearings involving Appellant. She had also seen Appellant a number of times around the base. On the morning of May 28, 2008, Capt Gilmore parked in the commissary parking lot before a wing run. As she walked toward the gym, she saw a car approach her driving quickly and "could see through the front windshield of the car . . . that it was Staff Sergeant Tim Staton." The car "did not . . . slow

3

down," was "heading towards [Capt Gilmore]," and "swerved at the last minute to miss [Capt Gilmore]." Capt Gilmore reported the incident and was reassigned from her role as trial counsel in the case. Appellant received a letter of reprimand for the incident.

Prior to trial, the defense filed a motion in limine under Military Rules of Evidence (M.R.E.) 403 and 404(b) to preclude the Government from offering evidence involving the vehicle incident as prior uncharged misconduct or as rebuttal to any good military character evidence the defense might introduce. In the motion, the defense stated that "SSgt Staton's alleged conduct while driving does not relate to the present charges. Nor does the alleged conduct fall into any of the other enumerated [M.R.E. 404(b)] exceptions." The Government responded during argument on the motion that "taking steps to intimidate [trial counsel] to prevent the court-martial from going forward is analogous [to witness intimidation] and shows that he has consciousness of guilt, he doesn't want the proceeding to continue, or he wants to at least to interfere [sic] with the smooth operation of those proceedings by making intimidating acts."

In written findings of fact and conclusions of law the military judge concluded that "[e]vidence of intimidation of witnesses or members of the prosecution is evidence which tends

to show consciousness of guilt on the part of the accused as discussed in United States v. Cook [48 M.J. 64 (C.A.A.F. 1998)]." With respect to balancing under M.R.E. 403, the military judge concluded, "Any danger of unfair prejudice is minimal and can be addressed with a tailored instruction."

Appellant was subsequently tried before a general court-martial for eight specifications of assault committed by battery upon a child. The Government's case included photographs of the dent in the wall, as well as testimony from Calyn Crow (the mental health therapist to whom SSgt. Staton self-reported); Lynn Merrit-Ford, a social services program director, who spoke to Appellant after he spoke with Ms. Crow; Pamela Wamhoff, a family advocacy officer assigned to Appellant's case; Kari Staton (Appellant's former wife); CJ; and Capt Gilmore. Capt Gilmore testified that on May 28, 2008, Appellant drove his car at her while she was in a parking lot, attempting to intimidate her. Appellant disputes the admission of Capt Gilmore's testimony as evidence of uncharged misconduct.

Appellant claimed that while the incidents with his stepson CJ took place, they fell within the parental discipline defense. Appellant was found guilty of all specifications.

DISCUSSION

This Court reviews the military judge's evidentiary rulings for an abuse of discretion. United States v. McCollum, 58 M.J.

5

323, 335 (C.A.A.F. 2003). We review the admissibility of uncharged misconduct under M.R.E. 404(b) using the three-part test articulated in United States v. Reynolds:

> 1. Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts?
>
> 2. What "fact . . . of consequence" is made "more" or "less probable" by the existence of this evidence?
>
> 3. Is the "probative value . . . substantially outweighed by the danger of unfair prejudice"?

29 M.J. 105, 109 (C.M.A. 1989) (ellipses in original) (citations omitted).

Evidence of uncharged misconduct is impermissible for the purpose of showing a predisposition toward crime or criminal character.[2] However, uncharged misconduct can be admitted for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[3] M.R.E. 404(b). In Cook, this Court concluded that

---

[2] See, e.g., United States v. Diaz, 59 M.J. 79, 94 (C.A.A.F. 2003) (military judge abused his discretion in admitting evidence of other injuries appellant allegedly inflicted on his daughter in an effort to establish that he killed his daughter); United States v. Rhodes, 61 M.J. 445, 453 (C.A.A.F. 2005) (military judge abused his discretion in admitting evidence of a meeting between a key government witness and appellant to show appellant's consciousness of guilt).

[3] The Government also asserts that Appellant opened the door to character evidence because the defense called three military character witnesses at trial. We disagree. The prosecutor intimidation evidence was introduced before Appellant's good

6

one of the "other purposes" for which uncharged misconduct may be admissible is evidence of "consciousness of guilt." 48 M.J. at 66.

The parties agree that Reynolds provides the proper framework to review for error in this case. They also agree that prong one of the test is satisfied because the members could reasonably conclude that the incident occurred. However, the parties do not agree as to whether the incident in question reflects consciousness of guilt. Further, to the extent it does, the parties do not agree whether the probative value of such an evidentiary inference was outweighed by the danger of unfair prejudice. This Court's analysis, thus, turns on prongs two and three of the Reynolds test.

Prong two of the test asks whether the evidence makes a "fact [that is] of consequence" in the case "more probable or less probable." This is a question of logical relevance. See M.R.E. 401.

The Government contends, as the military judge concluded, that the behavior of intimidating a prosecutor is indicative of "consciousness of guilt" and analogous to instances of witness intimidation. Appellant disputes the comparison to witness intimidation, arguing that where witness intimidation could

---

military character evidence, therefore it is not properly rebuttal evidence.

prevent someone from testifying, prosecutor intimidation would have no corresponding favorable outcome.[4]  Moreover, Appellant proffers, the act of driving aggressively toward Capt Gilmore could be an expression of frustration with being wrongly accused, rather than a reflection of consciousness of guilt.

It is well established that witness intimidation is relevant evidence to demonstrate consciousness of guilt.  Cook, 48 M.J. at 66.[5]  However, courts have not had as many occasions to address the subject of prosecution intimidation.  Both parties cite United States v. Copeland, 321 F.3d 582 (6th Cir. 2003), in support of their arguments; it is the only federal case the parties cite on point.

In Copeland, the issue centered on the admission of jailhouse statements by two defendants, who were overheard by a third inmate, discussing "their intention to pay someone $500 to 'get,' that is, harm, the Assistant United States Attorney" handling their case.  Id. at 597.  The Sixth Circuit concluded,

---

[4] Appellant asserts "it is unreasonable to conclude that the absence of an attorney would stop a trial from beginning."

[5] See also United States v. Gatto, 995 F.2d 449, 454 (3d Cir. 1993) (jurors may note threats or intimidation of witnesses); United States v. Mickens, 926 F.2d 1323, 1328-29 (2d Cir. 1991) (defendant's hand gesture in the shape of a gun may be considered by jury); United States v. Maddox, 944 F.2d 1223, 1230 (6th Cir. 1991) (jurors may consider defendant's alleged mouthing of the words "you're dead").

first on the question of spoliation,[6] that "there was no evidence in the record that suggests that the removal of [the prosecutor] would have had a significant effect upon the government's success at trial." Id. at 598. Thus, the statements did not indicate the defendants' intention to destroy evidence and such threats did not per se constitute evidence of spoliation. Id. As to consciousness of guilt, the court concluded the statements were probative, "but the lack of specificity linking the statements to the charged conduct permits only a weak inference." Id. at 598.

Appellant cites Copeland for the proposition that threats against prosecutors are less probative than threats against witnesses, if probative at all. The Government cites Copeland for its ultimate conclusion that "the statements . . . possess some probative value as to the defendants' consciousness of guilt." Id.

We conclude that both in concept and in the circumstances of this case, the evidence of prosecutor intimidation raises an inference from which a factfinder could reasonably infer consciousness of guilt. While Copeland qualitatively distinguished witness intimidation from prosecutor intimidation on the rationale that the prosecutor intimidation at issue did

---

[6] Spoliation, used here and in Copeland, refers to "[t]he intentional destruction, mutilation, alteration, or concealment of evidence." Black's Law Dictionary 1531 (9th ed. 2009).

not involve spoliation of evidence, we believe the real question is not one of analogy to witnesses, but one of consequence. If an accused seeks to intimidate a prosecutor handling his case, is such an act probative of consciousness of guilt?

This question may be informed by the sort of cost-benefit analysis that Appellant urges this Court to consider (and which features prominently in Copeland), which is, what would the accused gain from doing this? But that question presumes the issue to be solely a matter of spoliation. Conduct, as courts well know, is not always driven by the rational cost-benefit analysis of the probable effects of one's behavior. To the contrary, human nature sometimes prompts persons to strike out at those who seek to reveal misconduct or expose illegal acts. This might be done in anger, frustration, fear, an effort to deter or all four reasons at once.[7] Whether such an inference is well founded in context is for the factfinder to decide. That is also why the third prong of the Reynolds test in such cases as in this case requires careful contextual analysis.

---

[7] The Copeland court states, "[t]here are many conceivable reasons why a defendant awaiting trial would threaten to harm the prosecutor, including simple frustration with being wrongly accused." 321 F.3d at 598. The Copeland court provides no empirical data or evidence for this statement and we do not adopt it as part of our analysis. However, we do note that the military judge contemplated such a possibility when considering Appellant's motion: in addressing trial counsel he asked, in reference to a frustrated innocent accused as opposed to a frustrated guilty accused, "[W]ith respect to consciousness of guilt, how do I differentiate between these two people?"

The third prong of the Reynolds test requires a weighing of probative value and the danger of unfair prejudice; if the probative value is "substantially outweighed" by the danger of unfair prejudice, then the evidence should be excluded. The general risk, of course, is that members will treat evidence of uncharged acts as character evidence and use it to infer that an accused has acted in character, and thus convict. That risk was heightened in this case because the Government argued to the members that Appellant's conduct was driven by anger and a volatile personality.

Thus, on the one hand, the members might have taken the evidence of Appellant's aggression toward the trial counsel and extract from that the impermissible character-driven conclusion that he was a violent person and therefore guilty of the charged offense.

On the other hand, the military judge was cognizant of this concern. He gave the parties ample opportunity to argue their positions and he reached his conclusions of law following a deliberate application of the Reynolds test on the record. And while another judge might not characterize "[a]ny danger of unfair prejudice" as "minimal," as the military judge did in this case, we do agree with the military judge that in this case

the risk was addressed with a detailed and "tailored instruction regarding appropriate use of this information."[8]

In short, the military judge did not apply the wrong law or erroneously reach facts. His limiting instruction and statements on the record demonstrate knowledge and correct application of the law. In view of our analysis above, the military judge did not abuse his discretion in admitting evidence of Appellant's uncharged misconduct.

CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

---

[8] See the text of the military judge's instruction which appears in the Appendix to this opinion.

**APPENDIX**

The military judge's limiting instruction stated:

> You may consider the evidence regarding the accused driving towards Captain Gilmore for the limited purpose of its tendency, if any, to indicate an intent to intimidate the prosecution in this case and therefore as evidence of consciousness of guilt. You may consider this evidence only under the following circumstances:  First, you may not consider the evidence at all unless you believe it was the accused driving the vehicle in question. Second, you may only consider this evidence if you believe it indicates an intent by the accused to intimidate the prosecution in his case and that was thus evidence of consciousness of guilt.
>
> You may not consider this evidence for any other purpose, and you may not conclude from this evidence that the accused is a bad person, or has general criminal tendencies and that he therefore committed the offenses charged.  Each offense must stand on its own and you must keep the evidence of each offense separate.  The prosecution's burden of proof to establish the accused's guilt beyond a reasonable doubt remains as to each and every element of each offense charged.

United States v. Staton, No. 10-0237/AF

EFFRON, Chief Judge (concurring in the result):

The military judge in the present case permitted the prosecution to rely on an uncharged offense to prove that Appellant committed charged, but unrelated, child abuse offenses. Although uncharged misconduct may be used to prove consciousness of guilt in certain circumstances, including cases involving a prosecutor as the victim, the Government in the present case did not establish the requisite factual or legal predicate. For the reasons set forth below, I respectfully disagree with the majority's decision to uphold the military judge's ruling that the uncharged misconduct was admissible in this case. I would affirm the decision below on the narrower ground that the military judge's error was not prejudicial under the circumstances of this case.

The automobile incident

The charges against Appellant alleged various instances of assaulting his stepson, a minor child. The Government sought to introduce evidence of an unrelated incident involving an automobile driven by Appellant. During a hearing on the admissibility of this evidence, the Government presented testimony from an officer regarding an incident that occurred while the officer was serving as trial counsel in Appellant's case during an earlier stage of the proceedings.

The officer testified that as she was walking across a parking lot, she "noticed that there was a car coming from the south end of the parking lot at quite a high rate of speed," which she estimated to be twenty miles per hour. At first, she did not recognize the driver, but then she saw through the front windshield that Appellant was driving the car.

According to the officer, Appellant looked at her and continued to drive towards her. As the car got closer, she "stopped because I saw that the car was heading towards me, and didn't appear to be slowing down to let me cross the street." She then "slowed down and started to back up." She testified that the car approached to within three to five yards of her and swerved at the last minute to miss her.

The officer subsequently reported the incident. Appellant received a letter of reprimand, and the Government removed the officer from further participation in the case as trial counsel in view of her status as a potential witness.

At the conclusion of her testimony, the military judge asked the witness: "What did you take all of this to mean?" The witness made four points in response. First, "I took it to mean that he had an opportunity, he saw me in the parking lot, he -- I'm certain has some anger towards me." Second, "I know he has anger towards the legal office in general with regards to this court-martial." Third, "And I think he started driving his

2

car at me to intimidate me or to make some sort of showing of power or intimidation." Fourth, "I do not believe he was attempting to hit me with his car."

The Government did not present any further evidence. The military judge ruled that the evidence was admissible to show consciousness of guilt. In his findings of fact, the military judge stated that the officer "took the accused's actions as an attempt to intimidate her, as Trial Counsel, and I find that a reasonable fact-finder could also find the actions to be evidence of an intent to intimidate Trial Counsel, and thus is evidence of consciousness of guilt."

At trial, the officer's testimony was consistent with her testimony at the motion hearing. The Government did not put forth any further evidence regarding the incident, including evidence as to how, if at all, the incident could have affected the trial of the underlying assault charges.

## The relationship between anger and consciousness of guilt

The Government has a variety of means to punish and deter misconduct towards a prosecuting officer, including prosecution under the Uniform Code of Military Justice (UCMJ), as well as nonjudicial and administrative measures. When such misconduct is not the subject of charges in a pending case, the act of uncharged misconduct may be admissible in a criminal prosecution under Military Rule of Evidence (M.R.E.) 404(b) when the act

3

demonstrates a fact of consequence to the case, such as an act or statement by the accused demonstrating consciousness of guilt -- but only if the evidence meets the criteria set forth in United States v. Reynolds, 29 M.J. 105, 109 (C.M.A. 1989). The Reynolds criteria must be applied with care to ensure that the evidence is not used to convict the accused by showing "a propensity to commit the charged or other crimes." Steven A. Saltzburg et al., 1 Military Rules of Evidence Manual § 404.02 [10][c], at 4-91 (6th ed. 2006).

The issue before us primarily involves the second prong of the Reynolds test -- the requirement that the prosecution demonstrate that the evidence of uncharged misconduct makes a fact of consequence more or less probable. United States v. Harrow, 65 M.J. 190, 202 (C.A.A.F. 2007). In the present case, the prosecuting officer testified as to her belief that Appellant was angry at both her and the legal office. She testified that he swerved a car close to her, and she further testified that she did not believe he was attempting to hit her. She speculated that he carried out this act "to intimidate [her] or to make some sort of showing of power or intimidation." The Government elicited no specific information as to the actual or potential impact on the ability of the prosecution to introduce evidence, exercise discretion, or otherwise take action with respect to a fact of consequence in the case.

4

An act of uncharged misconduct motivated by the anger of an accused towards a prosecuting official does not prove that the accused committed the charged offenses in a pending trial. Given the stress of a prosecution in which reputation, career, family relationships, and extended confinement are at stake, it would not be unusual for an accused person to harbor negative feelings towards those viewed as responsible for his or her predicament, including feelings of anger. A person who believes he or she is innocent and wrongfully prosecuted may well harbor deep feelings of anger and resentment. Likewise, a person may recognize his or her responsibility for the conduct at issue but may nonetheless feel great anger over what he or she views as overcharging or a selective prosecution.

To prove that the act of anger makes a fact of consequence -- consciousness of guilt -- more or less probable under Reynolds, the Government must demonstrate a connection between the act of anger and the potential impact of the act on matters connected to the determination of guilt, such as the availability of evidence or exercise of prosecutorial discretion. In the present case, the Government did not demonstrate a relationship between Appellant's act of swerving the vehicle and the availability of evidence, the exercise of prosecutorial discretion, or any other matter that would establish the probability of a fact of consequence in the case.

The responsibility for ensuring that such evidence meets the Reynolds criteria rests in the first instance with the military judge, not the court-martial panel. In the absence of a link between the act and the consequences for the prosecution of the case, the military judge erred by permitting the prosecution to elicit the testimony about the uncharged misconduct as evidence of Appellant's consciousness of guilt.

The evidence also should have been excluded under the third prong of Reynolds, which balances the probative value of the evidence against the danger of unfair prejudice. See Harrow, 65 M.J. at 202. Here, the low probative value of the uncharged misconduct evidence was outweighed by the danger of unfair prejudice. The Government, in addressing the merits of the assault charges, specifically contended that the charged assaults resulted from Appellant's violent and volatile personality. The evidence of Appellant's uncharged misconduct in the automobile incident unnecessarily raised the risk that the members might infer that Appellant had a violent and volatile personality, and that the charged assaults were in conformity with these personality traits. Under these circumstances, the risk of prejudice far outweighed any probative value. To the extent that the military judge addressed these considerations in his instructions, that factor would bear on an assessment of whether the erroneous admission

of the evidence constituted prejudicial error, not on the question of whether the military judge should have excluded the evidence from any consideration by the members.

For the foregoing reasons, I respectfully disagree with the majority's conclusion that the military judge did not abuse his discretion in admitting the evidence of uncharged misconduct.  I concur in the result, however, in view of the test for prejudice under Article 59(a), UCMJ, 10 U.S.C. 859(a) (2006).  See United States v. Baumann, 54 M.J. 100, 105 (C.A.A.F. 2000) (holding that the government must show that the erroneous admission of evidence under M.R.E. 404(b) did not materially prejudice the substantial rights of the appellant).  The Government had substantial evidence in support of Appellant's guilt, including Appellant's own confessional statements and the testimony of the victim and the victim's mother.  Considering the severity of the injuries to his stepson, Appellant's parental discipline defense was fairly weak.  Accordingly, I concur in the majority's decision to affirm the findings and sentence.