UNITED STATES, Appellee

v.

Christopher J. CLARK, Senior Airman
U.S. Air Force, Appellant

No. 10-0588

Crim. App. No. 37499

United States Court of Appeals for the Armed Forces

Argued December 15, 2010

Decided March 7, 2011

BAKER, J., delivered the opinion of the Court, in which EFFRON, C.J., and ERDMANN, STUCKY, and RYAN, JJ., joined.

<u>Counsel</u>

For Appellant: Captain Nicholas W. McCue (argued); Lieutenant Colonel Gail E. Crawford and Major Anthony D. Ortiz (on brief); Colonel Eric N. Eklund.

For Appellee: Captain Michael T. Rakowski (argued); Colonel Don Christensen, Captain Joseph J. Kubler, and Gerald R. Bruce, Esq. (on brief).

Military Judge: William E. Orr Jr.

<u>**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**</u>.

Judge BAKER delivered the opinion of the Court.

At a general court-martial convened at Holloman Air Force Base, New Mexico, a panel composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of attempting to communicate indecent language to a child under the age of sixteen and one specification of using the Internet to transfer sexually explicit electronic images to a person he believed had not attained the age of sixteen, in violation of Articles 80 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 934 (2006).  The adjudged and approved sentence consists of a bad-conduct discharge, confinement for eighteen months, reduction to E-1, and a reprimand.

On review, the United States Air Force Court of Criminal Appeals affirmed.  United States v. Clark, No. ACM 37499, 2010 CCA LEXIS 182, at *20, 2010 WL 2265672, at *7 (A.F. Ct. Crim. App. Apr. 30, 2010).

We granted review of the following issues:

I.   WHETHER IT WAS PLAIN ERROR FOR TRIAL COUNSEL TO ELICIT TESTIMONY THAT APPELLANT DID NOT RESPOND VERBALLY WHEN ARRESTED, AND THEN RELY ON THIS TESTIMONY DURING CLOSING ARGUMENT.

II.  WHETHER THE MILITARY JUDGE COMMITTED CONSTITUTIONAL ERROR THAT WAS NOT HARMLESS BEYOND A REASONABLE DOUBT WHEN HE OVERRULED DEFENSE COUNSEL'S OBJECTION DURING TRIAL COUNSEL'S IMPROPER REBUTTAL ARGUMENT.

For the reasons set forth below, we conclude that it was plain or obvious error for trial counsel to elicit testimony of Appellant's failure to respond verbally to an accusation when apprehended and then rely on this testimony in his closing argument. We further conclude that the military judge committed constitutional error when he overruled Appellant's objection during trial counsel's improper rebuttal argument. However, we also conclude that these violations were harmless beyond a reasonable doubt. Therefore, we affirm the United States Air Force Court of Criminal Appeals.

## I.  BACKGROUND

### A.  The Investigation

On April 25, 2008, Appellant entered a Yahoo chat room from his personal computer on base under the username "thedude94_2000" and initiated a conversation with "cuti3pi32008," an undercover officer who identified himself as a thirteen-year-old girl named "Suzie." Upon adding each other as "friends," Appellant's subsequent messages to "Suzie" showed up as "Chris Clark." During the course of their messaging, Appellant sent "Suzie" erotic images, engaged in sexual conversation, and ultimately invited "Suzie" to have sex and asked for her address and phone number. The officer gave Appellant a phone number and the address to a decoy house.

3

Appellant never went to the house, called the phone number, or communicated with "Suzie" again.

Appellant's identity was confirmed with a photograph from the Defense Enrollment Eligibility Reporting System (DEERS), and agents and security forces went to Appellant's home later that night.  They detained him outside while they performed an initial sweep of his home for other occupants.  Special Agent (SA) Billy Garcia, one of the agents who conducted the sweep, testified in response to trial counsel's questions that after performing the initial sweep, the agents returned to Appellant and "told him that we had been notified that he had been sexually communicating with a minor; a child."  He further testified that in response, "[Appellant] didn't say anything, he kind of just put his head down and kind of just looked down" and slumped his shoulders.  The agents and security forces then went with Appellant back into the home, where agents searched for evidence and found a notebook near Appellant's computer in which was written "thedude94_2000."

Senior Airman Eric Clark, a member of the security forces, testified that he and his partner escorted Appellant into another room in the house, "where we sat him down and we were to watch him while they completed searching the house."  He further testified that while they were watching Appellant, Appellant made an unsolicited statement "that he had spoken to a minor on

4

the Internet.  That the girl was -- he said that he knew that she was underage" and "that he suspected she was a cop."

Appellant was subsequently transported to OSI to be interviewed by agents.  At that point, OSI agents read Appellant his rights pursuant to Article 31, UCMJ, 10 U.S.C. § 831 (2006), for the first time.  SA Garcia testified that during the interview he "[t]old [Appellant] the same thing that we told him earlier at his home.  That he was suspected of communicating sexually with a minor."  When trial counsel asked, "And did he say anything in response to you this time?" SA Garcia responded, "No he didn't."  At some point, Appellant elected not to have an attorney present and agreed to answer questions.  Appellant admitted that his username was "thedude94_2000," that he knew "cuti3pi32008" was thirteen, that he had sent her the images, and that he used sexually explicit language.  Appellant also provided a sworn written statement of these admissions:

> The 25th of April 2008 I was talking to a 13 yr old from
> Clovis NM.  I started of [sic] talking about who is she and
> where she's from.  Then I asked sexuall [sic] questions
> such as you ever been with a guy.  She said yes and I asked
> how old was he.  Then I asked more questions such as you
> want to see pictures.  She said sure.  So I showed her 7 to
> 8 pictures.  3-4 were of a girl on a bed.  Covered in 2 and
> showing in the other 2.  Then I also showed 3 intercourse
> pictures.  1 nonintercourse but still nude pics.  Then I
> asked here [sic] where she lived and her phone number. . .
> . Of the pics I showed the 13 yr old only one was of me
> blowing a kiss.

5

Following the interview, while waiting for the first sergeant to arrive, Appellant commented that the agents "had caught him red-handed."

## B.  Trial Proceedings

At various stages during the trial proceedings, trial counsel made reference to Appellant's physical and verbal responses to the accusations presented by SA Garcia, either by direct comment or by eliciting a response during examination of a witness.  Appellant cites five specific instances of these references giving rise to the issues presented in this case.

First, during his opening statement at trial, trial counsel made the following statement:

> You will hear how when confronted with being suspected of criminally speaking or communicating with a minor with sexual language, the accused's shoulders slumped and his head dropped; chin to chest.

Second, during direct examination of SA Garcia, trial counsel engaged in the following series of questions regarding Appellant's initial apprehension:

> [Trial Counsel:  W]hat did you tell [Appellant] as to why the reason you were there?
>
> [Witness:]  We told him that we had been notified that he had been sexually communicating with a minor; a child.
>
> . . . .
>
> [Trial Counsel:]  And when you told him that, do you recall what his response was?

[Witness:]  Yeah, well he didn't say anything, he just kind of put his head down and kind of just looked down.

. . . .

[Trial Counsel:]  Did he say anything?

[Witness:]  No.

Third, trial counsel proceeded to question SA Garcia regarding his post-rights advisement interview with Appellant:

[Trial Counsel:]  Did you ever explain to the accused or tell the accused why he was there?

. . . .

[Witness:  We t]old him the same thing that we told him earlier at his home.  That he was suspected of communicating sexually with a minor.

[Trial Counsel:]  And did he say anything in response to you this time?

[Witness:]  No, he didn't.

Fourth, during his closing arguments, trial counsel made the following comments:

[B]efore he's interviewed with OSI, they go to his house. Remember that testimony?  They go to his house, Agent Garcia walks up to the accused, and quite clearly the accused was looking into his eyes.  They looked.  Agent Garcia walked up to him and said, you are under suspicion of criminal communication with a minor.  What is the accused's response when he's confronted with this fact? Does he say, what?  Does he say, no?  What does he do? Sometimes body language is just as powerful as verbal confessions.  When he's confronted with this disgusting crime that he just committed, his shoulders slump and he puts his head down.  That is a defeated position.  He's confronted and he's caught.

. . . .

7

But there's more.  He's taken to OSI, he's placed in a room, agents walk into the room, and again they confront them [sic].  You are under suspicion for criminally communicating with a minor in a sexual manner.  Second time.  Hours later at this point he's confronted with what he had just done.  And what is his response?  Nothing.  He doesn't respond to that comment.

And finally, following defense counsel's closing argument, trial counsel made the following rebuttal argument:

Come on, members.  Nobody asked you to leave your common sense at the door.  No one.  The defense says the first thing he says is, "I knew it was a cop."  Was that the first thing he said?  Or was the first thing he said by body language, a defeated position when he's confronted with speaking with a minor.  Does he say, wait a minute Detective Garcia.  Hold on there, just a sec.  I was just kidding.  I actually knew it was a cop when I sent that language.  Does he say that?  I accuse you of speaking sexually with a child.  I accuse you of speaking sexually with a child.  No comments, no denial, no response.

Defense counsel objected only to trial counsel's rebuttal argument.  In overruling the objection, the military judge said, "I'm going to overrule it just on the basis that -- in the context in which he's using it.  So, I'll overrule your objection right now, but be careful, trial counsel."

## II.  DISCUSSION

### A.  Direct Examination and Closing Argument

Whether there has been improper reference to an accused's exercise of his constitutional rights is a question of law that we review de novo.  United States v. Moran, 65 M.J. 178, 181 (C.A.A.F. 2007) (citing United States v. Alameda, 57 M.J. 190, 198 (C.A.A.F. 2002)).  Because the asserted errors regarding

trial counsel's references during the opening statement, direct examination of SA Garcia, and closing argument were not preserved at trial, this Court reviews them for plain error. Id.

Whether there was plain error is a question reviewed de novo. Id. To find plain error, Appellant must show that there is error, that the error was plain or obvious, and that the error materially prejudiced his substantial rights. See United States v. Powell, 49 M.J. 460, 463 (C.A.A.F. 1998).

Servicemembers have a constitutional, statutory, and regulatory right to silence. U.S. Const. amend. V; Article 31, UCMJ; Military Rules of Evidence (M.R.E.) 304(h)(3); see also United States v. Carter, 61 M.J. 30, 33 (C.A.A.F. 2005). Thus, it is settled that the government may not use a defendant's exercise of his Fifth Amendment rights as substantive evidence against him. United States v. Gilley, 56 M.J. 113, 120 (C.A.A.F. 2001) (citing Griffin v. California, 380 U.S. 609, 614) (1965)). M.R.E. 304(h)(3) safeguards this right, further providing:

> A person's failure to deny an accusation of wrongdoing concerning an offense for which at the time of the alleged failure the person was under official investigation or was in confinement, arrest, or custody does not support an inference of an admission of the truth of the accusation.

Thus, in Alameda, we held that, "based on the language of Mil. R. Evid. 304(h)(3) and what we perceive to be the weight of

9

authority in the federal circuits," it is constitutional error "to introduce evidence of appellant's post-apprehension silence as substantive evidence of guilt, and to then comment on that evidence in closing argument." 57 M.J. at 199. "A lack of response or reaction to an accusation is not 'demeanor' evidence, but a failure to speak." Id. (citing United States v. Velarde-Gomez, 269 F.3d 1023, 1028 (9th Cir. 2001)).

The lower court distinguished this case from Alameda on the basis that "[u]nlike the accused in Alameda, the appellant's response," as described in testimony and by trial counsel, "was not mere silence, but instead a clear physical reaction without words." Clark, 2010 CCA LEXIS 182, at *16, 2010 WL 2265672, at *6. Therefore, the CCA concluded it constituted "proper demeanor evidence. . . . [that] is admissible to show the accused's consciousness of guilt and . . . is a proper subject of comment by counsel." Id. The lower court further concluded, "[a]rguably, the question 'what did he say' crossed the line" and "trial counsel also made passing reference to the appellant's lack of verbal response during his argument; however, it is clear from the context of the argument that the comment was in fact focused on the demeanor evidence." Id. at *16-*17, 2010 WL 2265672, at *6.

The central question in this case is whether some or all of the testimony and statements by trial counsel refer to

Appellant's right to silence, or whether they are more accurately described as testimony and statements regarding Appellant's nontestimonial demeanor. We disagree with the court's conclusion that the focus of the statements was on the nontestimonial character of the demeanor evidence, or that such "focus" is determinative on this issue. We turn first to the subject of demeanor evidence.

## I. Demeanor Evidence

In light of the CCA's analysis of "demeanor evidence," we begin with a review of the law regarding the admissibility of an accused's demeanor in light of established Fifth Amendment and relevance principles. In doing so, we recognize that the lines between the various categories of demeanor are not always clear. See United States v. Pope, 69 M.J. 328, 334 (C.A.A.F. 2011). Thus, it is also necessary for us to establish a framework within which to analyze its admissibility.

"Demeanor" evidence is evidence that describes or portrays "[o]utward appearance or behavior, such as facial expressions, tone of voice, gestures, and the hesitation or readiness to answer questions." Black's Law Dictionary 496 (9th ed. 2009). In its traditional sense, demeanor merely refers to the nonverbal conduct of a testifying witness or of the accused while on the witness stand or in the courtroom, rather than evidence counsel may seek to formally admit under the rules of

11

evidence.  See 1A Wigmore on Evidence § 24, at n.5 (Tiller rev. 1983); United States v. Cook, 48 M.J. 64, 66 (C.A.A.F. 1998) (citing 2 Wigmore on Evidence § 274(2) at 119-20 (Chadbourne rev. 1979) ("the attempt to force a jury to become mentally blind to the behavior of the accused sitting before them involves both an impossibility in practice and a fiction in theory")).  However, demeanor evidence may also include physical evidence (a photograph) or real evidence, as in the case of physical observations made by a witness testifying, including other exemplars used to identify the accused (e.g., where the suspect was made "'to stand, to assume a stance, to walk, or to make a particular gesture'").  Pennsylvania v. Muniz, 496 U.S. 582, 591 (1990) (quoting Schmerber v. California, 384 U.S. 757, 764-65 (1966)).  Furthermore, an accused's demeanor has been admitted where it is relevant to an accused's "consciousness of guilt" under M.R.E. 404(b), such as in cases of an accused fleeing from the scene of a crime or destroying evidence, or in cases of witness or prosecutor intimidation, see, e.g., Moran, 65 M.J. at 188; Cook, 48 M.J. at 66; United States v. Staton, 69 M.J. 228, 230 (C.A.A.F. 2010).  These categories of evidence of an accused's demeanor are generally nontestimonial and thus admissible and subject to appropriate comment where relevant under the rules of evidence.

Demeanor evidence may also be testimonial, however, such as where an accused points to the scene of a crime and then to himself while nodding his head up and down in response to police questioning. See Muniz, 496 U.S. at 594 (defining "testimonial" as "'communication [that] itself, explicitly or implicitly, relate[s] a factual assertion or disclose[s] information'" (quoting Doe v. United States, 487 U.S. 201, 210 (1988))). Testimonial demeanor, like other testimonial evidence in response to police questioning, implicates an accused's right to silence and against self-incrimination, thus triggering the application of the Fifth Amendment and its statutory and regulatory safeguards. See Schmerber, 384 U.S. at 761 n.5, 763-65 (noting that "[i]t is clear that the protection of the privilege [against self-incrimination] reaches an accused's communications, whatever form they might take" and that "[a] nod or head-shake is as much a 'testimonial' or 'communicative' act in this sense as are spoken words"). Even where demeanor is nontestimonial, improper commentary on the accused's silence in response to police questioning when presenting evidence of an accused's demeanor may nevertheless implicate the same rights and protections as testimonial evidence. Cf. Griffin, 380 U.S. at 615 (holding that the Fifth Amendment "forbids . . . comment by the prosecution on the accused's silence"); Alameda, 57 M.J. at 199. Thus, where the evidence concerns testimonial demeanor

13

or includes improper commentary on the accused's silence, that demeanor evidence is generally inadmissible under the Fifth Amendment and its statutory and regulatory safeguards, unless the accused waives those rights or otherwise invites the evidence.  See, e.g., United States v. Robinson, 485 U.S. 25, 32-34 (1988) (holding that the privilege against self-incrimination is not violated when the prosecutor's reference to the defendant's silence is a "fair response to a claim made by defendant or his counsel").

Based on the foregoing, a framework for assessing the admissibility of the evidence of an accused's demeanor emerges. First, we must identify the demeanor at issue and ask whether the demeanor is itself testimonial or not testimonial in nature, or whether evidence of the demeanor at issue includes improper commentary on the accused's silence.  If evidence of an accused's demeanor is testimonial or includes an improper comment on silence, we analyze the evidence under the Fifth Amendment or applicable statutory and regulatory safeguards. Where the evidence is neither testimonial nor an improper comment on silence, we then consider whether the accused's demeanor was relevant under M.R.E. 404(b) or other evidentiary rules relating to relevance.  Therefore, the fact that trial counsel's comments were merely "focused on" nontestimonial demeanor is not dispositive in any case.

## 1.  Plain Error

In this case, we need not find the fine line that might exist between nontestimonial demeanor evidence, like a mere shoulder slump or head shrug, and the shoulder slump or head shrug that is testimonial and communicative in nature.  For whatever may be inferred from the testimony in this case regarding Appellant's physical responses while being questioned at his home, trial counsel's questions and statements clearly and repeatedly used Appellant's silence and body language as expressions of guilt.  Trial counsel's comments in his opening statement, direct examination of SA Garcia, and closing argument constituted plain error because they clearly commented on Appellant's silence in response to SA Garcia's post-apprehension, pre-advisement accusation of criminal conduct, in violation of M.R.E. 304(h)(3) and the Fifth Amendment right to silence.[1]  A review of each statement indicates why.

---

[1] Thus, we are also not required to proceed to the second step of the demeanor analysis and decide here whether Appellant's demeanor was relevant to consciousness of guilt under M.R.E. 404(b) or as real or physical evidence.  We do note that demeanor evidence is relevant to an accused's consciousness of guilt only in cases where the inference of guilt is clear, see e.g., Moran, 65 M.J. at 188 (holding that evidence of the accused shaving all of his body hair after learning that investigators wanted a hair sample was relevant); Cook, 48 M.J. at 66 (citing examples of witness intimidation, such as making a hand gesture in the shape of a gun and mouthing the words "'you're dead'" in the courtroom) (citation omitted); Staton, 69 M.J. at 231 (attempting to run over the prosecutor in the parking lot).  Subtle physical demeanor is not admissible as

First, trial counsel's opening statement referred to Appellant's reaction -- "shoulders slumped and his head dropped; chin to chest" -- as his response to being "confronted with being suspected of criminally speaking or communicating with a minor with sexual language."  Rather than describe Appellant's body movements as one of a series of events to describe what was happening, trial counsel was conveying that Appellant failed to deny the accusation.

In addition, during direct examination of SA Garcia, trial counsel not only elicited explicit comments on Appellant's response of silence but explicitly commented on Appellant's silence himself in the examination questions.  Trial counsel asked, "[a]nd when you told him [the accusation], do you recall what his response was?," and "Did he say anything?" -- to which SA Garcia replied, "he didn't say anything," and "No." (Emphasis added.)

Moreover, although Appellant's response to SA Garcia during the OSI interview occurred after Appellant waived his rights,

---

relevant to an accused's consciousness of guilt, because it is equally susceptible to other inferences.  See Cook, 48 M.J. at 67 (holding that yawning by the accused during testimony of the effects of child abuse was irrelevant where the appellant was familiar with the evidence "because he previously had been counseled by the first sergeant for child abuse"); id. at 66 (citing other examples of irrelevant demeanor by the accused, such as laughing during testimony that the accused threatened the life of the President, consulting with counsel during trial, or moving a leg up and down in a seemingly nervous fashion during trial).

16

trial counsel's questions and the elicited responses made clear

reference to Appellant's pre-rights advisement response of

silence.  SA Garcia testified "[We t]old him the same thing that

we told him earlier at his home," to which trial counsel

responded, "And did he say anything in response to you this

time?"  (Emphasis added).

Finally, trial counsel relied on these comments in his

closing argument to explicitly argue that Appellant's silence

evidenced his guilt:

> What is the accused's response when he's confronted with
> this fact?  Does he say, what?  Does he say, no?  What does
> he do?  Sometimes body language is just as powerful as
> verbal confessions.  When he's confronted with this
> disgusting crime that he just committed, his shoulders
> slump and he puts his head down.  That is a defeated
> position.

Trial counsel's closing argument is more direct than the closing

argument made by trial counsel in Alameda:

> ". . . And lo and behold, the cops came and picked me up,
> and I was just sitting there on the steps, didn't know what
> this was about," but didn't bother even to ask.
>
> . . . .
>
> [Trial Counsel]:  And when Sergeant Moody approaches him on
> the steps and says, "Are you Tedio Alameda?  Stand up. . .
> . Let me see your identification card."  He doesn't even
> say, "What's this all about?"

57 M.J. at 196.  The rhetorical questions employed by trial

counsel in each case clearly suggested to the panel that an

innocent person would have said something; therefore, the

17

accused's silence was being used as evidence of guilt. Indeed, trial counsel stated that Appellant's demeanor was "body language [that] is just as powerful as [a] verbal confession[]."

The Fifth Amendment cannot with one hand protect an accused from being compelled to testify and yet with the other hand permit trial counsel to argue that an accused's silent demeanor in response to an accusation of wrongdoing is tantamount to a confession of guilt. These kinds of arguments are exactly what M.R.E. 304(h)(3)[2] addresses. As this Court has made clear in other cases, "[s]uch comments may serve to hinder the free exercise of such rights -- rights that carry with them the 'implicit assurance that [their] invocation . . . will carry no penalty.'" Moran, 65 M.J. at 181 (alteration in original) (quoting United States v. Daoud, 741 F.2d 478, 480 (1st Cir. 1984)).

## A. Rebuttal Argument

The second issue relates to trial counsel's rebuttal argument. Unlike the errors related to the first issue,

---

[2] M.R.E. 304(h)(3) provides:

A person's failure to deny an accusation of wrongdoing concerning an offense for which at the time of the alleged failure the person was under official investigation or was in confinement, arrest, or custody does not support an inference of an admission of the truth of the accusation.

Appellant objected to these comments, thus preserving the error

and subjecting it to a separate analysis.

The Government argues that trial counsel's comments on

rebuttal were invited as fair response to Appellant's general

argument that Appellant thought "Suzie" was a cop.

"[T]he Government is permitted to make 'a fair response' to

claims made by the defense, even when a Fifth Amendment right is

at stake." Gilley, 56 M.J. at 120 (citing Robinson, 485 U.S. at

32). In order to determine whether trial counsel's comments

were fair, we must examine them in context. Id. at 121. "In

reviewing the actions of the military judge, we must ask

whether, given the defense theory of the case, trial counsel's

comments were fair." Id. at 123.

The theory behind defense counsel's closing argument was

that Appellant suspected "Suzie" was a law enforcement officer

all along and that he confessed to knowing that "Suzie" was a

thirteen-year-old girl only because that is what he was being

told to do. At one point, defense counsel argued:

> What is it that Airman Clark said right from the start?  "I
> thought it was a cop."  And he didn't say that because
> someone told him that really was a cop you were chatting
> with.  Because what he was being told is that really was a
> 13-year-old girl.  That really was a 13-year-old girl and
> what was his response?  "It sounded like a cop; I thought
> it was a cop."
>
> Now in his statements to OSI, trial counsel wants you
> to only believe those statements that support their
> position on this case.  They only want you to believe the

19

> part in there where Airman Clark refers to the person as a 13-year-old girl. Of course, why is he referring to it as a 13-year-old girl, that's what everyone was telling him that who he was chatting with was a 13-year-old girl.

In rebuttal, trial counsel argued:

> The defense says the first thing he says is, "I knew it was a cop." Was that the first thing he said? Or was the first thing he said by body language, a defeated position when he's confronted with speaking with a minor. Does he say, wait a minute Detective Garcia. Hold on there, just a sec. I was just kidding. I actually knew it was a cop when I sent that language. Does he say that? I accuse you of speaking sexually with a child. I accuse you of speaking sexually with a child. No comments, no denial, no response.

Trial counsel may use the fact of post-arrest silence "'to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest,'" thus acting not as substantive evidence of guilt but rather as a "'challenge [to] the defendant's testimony as to his behavior following arrest.'" Gilley, 56 M.J. at 120 (quoting Doyle v. Ohio, 426 U.S. 610, 619-20 n.11 (1976)). However, trial counsel is prohibited from "'treat[ing] the defendant's silence as substantive evidence of guilt.'" Id. at 121 (quoting Robinson, 485 U.S. at 32); M.R.E. 304(h)(3). That is what trial counsel did here. He did not merely rebut Appellant's assertion that he thought "Suzie" was a law enforcement officer, he argued through Appellant's demeanor that "the first thing he said by body language, a defeated position

20

when he's confronted with speaking with a minor. . . . No comments. No denial. No response."

This is not a scenario where Appellant testified to making an exculpatory statement to the police after his arrest, when in fact he did not. Nor did defense counsel argue that the "first" thing Appellant said was, "I thought it was a cop." Defense counsel could not have made that argument for obvious reasons. He was relying on Senior Airman Clark's testimony of Appellant's spontaneous unwarned statement that Appellant "had spoken to a minor on the Internet. That the girl was -- he said that he knew that she was underage," and that Appellant "suspected that she was a cop." Furthermore, despite defense counsel's theory, defense counsel acknowledged in his closing argument that Appellant made other statements to OSI "referring to ["Suzie"] as a thirteen-year-old girl." Thus, taken in context, defense counsel's closing argument did not invite trial counsel to argue what Appellant said "first," or rather what Appellant said "first" through "body language." Such statements went beyond what was permissible as fair response and used Appellant's demeanor and silence as evidence of guilt. Under Alameda this is constitutional error.

## A. Harmlessness

"For constitutional error, we must be satisfied beyond a reasonable doubt that the error was harmless." Alameda, 57 M.J.

21

at 199-200.  Whether the errors in this case were preserved or unpreserved, our review of the facts results in the same conclusion:  any errors in this case were harmless beyond a reasonable doubt.

The Government's case against Appellant was supported by substantial evidence.  Appellant was positively identified by his name and contact information online after Appellant became "friends" with "Suzie."  His online information was later visually matched through the DEERS, and confirmed upon the OSI agents' arrival at Appellant's home.  OSI agents recovered Appellant's notebook near his computer containing the same user name Appellant had used to communicate with "Suzie."  Appellant spontaneously remarked to Senior Airman Clark that he knew that "Suzie" was underage.  And, Appellant affirmatively waived his Fifth Amendment rights at the OSI office, admitting both in the interview and in a sworn statement to sexual communications with someone he believed to be thirteen years old.  Appellant's case, on the other hand, rests entirely on the fact that Appellant stated that "he suspected ["Suzie"] was a cop," without being able to contradict any of the Government's evidence.

## III.  CONCLUSION

For the foregoing reasons, the decision of the United States Air Force Court of Criminal Appeals is affirmed.