CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HAIGHT, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant SAMUEL J. CHANCE**
**United States Army, Appellant**

ARMY 20140072

Headquarters, Joint Readiness Training Center and Fort Polk
Rebecca K. Connally, Military Judge
Colonel Samuel A. Schubert, Staff Judge Advocate (pretrial)
Lieutenant Colonel James A. Barkei, Staff Judge Advocate (post-trial)

For Appellant:  Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA; Captain Patrick J. Scudieri, JA (on brief); Major Christopher D. Coleman, JA; Captain Patrick J. Scudieri, JA (on brief on supplemental assignment of error); Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Patrick J. Scudieri, JA (on reply brief on supplemental assignment of error).

For Appellee:  Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G Courie, III, JA; Major Daniel D. Derner, JA; Captain Timothy C. Donahue, JA (on brief); Colonel Mark H. Sydenham, JA; Major Daniel D. Derner, JA; Captain Timothy C. Donahue, JA (on brief on supplemental assignment of error) .

26 February 2016

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

A panel composed of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification each of maltreatment, abusive sexual contact, assault consummated by battery, and unlawful entry, in violation of Articles 93, 120, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 893, 920, 928 and 134 (2012) [hereinafter UCMJ].  The panel sentenced appellant to a bad-conduct discharge, confinement for 180 days, and

reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

Appellant's case is now before this court pursuant to Article 66, UCMJ. Appellant raises ten assignments of error, several of which require discussion and one of which merits relief. Appellant's matters submitted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), repeated matters already raised in the assigned errors and do not warrant separate discussion.

## FACTS

On 31 July 2013, Private (PV2) JC reported to Fort Polk, Louisiana after having completed advanced individual training. While pending a housing assignment, PV2 JC was housed in transient billeting at the "Warrior's Keep." As part of being assigned a room, PV2 JC provided the housing office her cellphone number and was issued a code to her room door. Private JC was assigned a room in an area of the building designated as "female only."

Appellant was assigned as a noncommissioned officer (NCO) at the Warrior's Keep. The next day, as PV2 JC was returning from the Central Issue Facility, appellant assisted in helping her carry several bags. As appellant assisted her with the bags he repeatedly remarked to PV2 JC that she should "come work for him." Later that day, while in-processing with her unit, PV2 JC complained to her unit sponsor about the "creepy sergeant" that worked at the Warrior's Keep.

That evening appellant called PV2 JC on her personal cell phone. Private JC answered the phone on the balcony of her room. As she began talking to appellant, appellant said, "I can see you." Private JC saw appellant with a phone to his head. She then hung up the phone and walked towards him to continue the conversation in person. As they finished the conversation in person, appellant said, "I'm going to stop by later." Private JC responded, "Okay."

Private JC then returned to her room where, after making some personal phone calls, she went to sleep. At trial she testified that the next thing she recalled was awaking to appellant inside her room, whispering her first name over and over. Hoping he would go away, she pretended to be asleep. Instead, appellant sat on her bed leaned over her, and began touching her shoulders and moving his hands down her back, reaching "below [her] lower back."

As this was happening, PV2 JC's phone rang. In response to the phone, she pretended to wake up, pulled the covers over her more tightly, and told appellant, "You don't have to do this." Appellant responded, "Oh, it's okay. I needed something to keep me awake." Appellant then left PV2 JC's room. Private JC then spent the night with a friend. The next day, PV2 JC reported the incident to an NCO in her unit.

During a pretext phone call, appellant stated to PV2 JC that he had given her "a little back rub" and that "something pulled me to you." In a statement to Criminal Investigative Command (CID), appellant admitted using a key code to gain access to PV2 JC's room at midnight, but denied any intention of having sex with her.

## DISCUSSION

*1. United States v. Elonis*

Appellant argues the Supreme Court's decision in *United States v. Elonis*, 135 S. Ct. 2001 (2015), requires that we set aside appellant's maltreatment conviction. In *Elonis,* the Court addressed the *mens rea* required for violating 18 U.S.C. § 875(c) ("Interstate communications"). We find the Supreme Court's decision in *Elonis* to be inapplicable to the offense of maltreatment under Article 93, UCMJ.

As an initial matter, we note *Elonis* is a case of statutory construction, and, as such, is limited to 18 U.S.C. § 875(c). *United States v. Kirsch*, No. 07-CR-304S (6), 2015 U.S. Dist. LEXIS 42797, at *15 (W.D.N.Y. Dec. 16, 2015) (order denying second motion for a new trial) ("No case reported thus far extends Elonis's holding beyond § 875(c).").

In *Elonis*, the Supreme Court was faced with a criminal statute, 18 U.S.C. § 875(c), that criminalized communicating a threat through interstate commerce, but was silent on the *mens rea* required to commit the offense. The Court stated that when a statute is silent on the scienter needed to commit the offense, *and* a scienter requirement is needed to separate wrongful from innocent conduct, the *mens rea* required to commit the offense must be greater than simple negligence. *Elonis,* 135 S. Ct. at 2010 ("When interpreting federal criminal statutes that are silent on the required mental state, we read into the statute only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct.") (citing *Carter v. United States*, 530 U.S. 255, 269 (2000)) (internal quotation marks omitted).

Importantly, however, *Elonis* did not mandate a scienter requirement for all offenses. Rather, *Elonis* (at most) creates a gap-filling rule that stands for the "presumption" of a scienter requirement when the offense is otherwise silent. *Elonis*, 135 S. Ct. at 2010-11. The UCMJ contains numerous offenses that specifically require only a negligent mind. *See* UCMJ art. 110 (negligently hazarding a vessel); UCMJ art. 120(b)[1] (sexual assault; the government must prove that an accused knew or reasonably should have known that the victim was unconscious, asleep, or incapable of consent). With regards to Article 134, UCMJ, the statute specifically criminalizes "disorders *and neglects"* that are prejudicial to good order and discipline or which tend to discredit the service. UCMJ art. 134

---

[1] Corrected

(emphasis added). For those offenses where the crime clearly states a negligence standard, as the defense concedes in its brief, *Elonis* is inapplicable.

What both parties appear to miss,[2] however, is that maltreatment is also an offense which specifically states a specific *mens rea*. The President has explained the offense of maltreatment as follows:

> "*Nature of the act.* The cruelty, oppression, or maltreatment, although not necessarily physical, must be measured by an *objective* standard."

*Manual for Courts-Martial, United States,* (2012 ed.) [hereinafter *MCM*], pt IV, ¶ 17.c.(2) (emphasis added). In other words, this is not a circumstance where the offense is silent on the *mens rea*. Thus, there is no gap for *Elonis* to fill.

Moreover, the President's explanation is entirely consistent with the statutory definition of the offense. A person is guilty of maltreatment when he engages in "cruelty *toward*" or commits "oppression or maltreatment *of*" a person "subject to his orders." UCMJ art. 93 (emphasis added). The focus of this offense is that of the objective act and its effect rather than on the subjective intent of the actor.

Finally, a broader view helps to understand why the offense of communicating a threat in violation of 18 U.S.C. § 875(c) is fundamentally different than the offense of maltreatment under Article 93, UCMJ. The former criminalizes speech (which would otherwise be protected by the First Amendment).[3] The latter criminalizes behavior of someone who has been specifically entrusted with authority over a subordinate.

In *Elonis,* the Court limited its holding to circumstances where it is necessary to separate "wrongful" conduct from "innocent" conduct. *Elonis*, 135 S. Ct. at 2010. ("When interpreting federal criminal statutes that are silent on the required mental state, we read into the statute *only that mens rea which is necessary* to separate wrongful conduct from otherwise innocent conduct.") (internal quotation marks and

---

[2] Neither party's brief addresses or notes that the objective standard used by the military judge in instructing the panel comes from the definitions promulgated by the President under his authority pursuant to Article 36, UCMJ (The President may prescribe "modes of proof ").

[3] The Supreme Court explicitly avoided addressing the First Amendment issues that may arise by the criminalization of negligent speech. *Elonis*, 135 S. Ct. at 2012. However, one does not have to read the opinion too deeply to see the First Amendment issues that would arise had the Court decided the case differently.

citations omitted) (emphasis added). Put differently, absent confusion about whether an offense criminalizes innocent conduct, there is no reason to read into the offense an elevated *mens rea* requirement.[4]

Thus, while an elevated *mens rea* requirement is necessary to discriminate between innocent speech and wrongful speech, no such requirement is needed with regards to the offense of maltreatment. The statute at issue in *Elonis,* 18 U.S.C. § 875(c), regulates the conduct between civilians who have no special duty (or authority) over one another. Article 93, UCMJ, on the other hand delineates the outer limit of conduct by leaders of the military who have been entrusted with the care of their subordinates. It is wrongful to be objectively cruel towards a subordinate, regardless of one's subjective intentions.

### 2. *Mistake of Fact*

On appeal, for the first time, appellant asserts the military judge committed error when he failed to instruct the panel that mistake of fact was a defense to the crime of unlawful entry. Specifically, appellant asserts that his statement of "I'll stop by later" and PV2 JC's response of "Okay" created an honest and reasonable mistake in appellant's mind that he had PV2 JC's permission to enter her room at night using a key code.

Appellant forfeited any instructional error when he both failed to request a mistake of fact instruction and failed to object to the instructions given. Accordingly, we review for plain error. Rule for Courts-Martial [hereinafter R.C.M.] 920(f); *United States v. Davis*, 75 M.J. 537, 544 (Army Ct. Crim. App. 2015) ("[I]n the case of any unpreserved error, the failure to request or object to an instruction on a defense forfeits the matter, absent plain error.").

A military judge has an affirmative duty to instruct on special defenses reasonably raised by the evidence. R.C.M. 920(e)(3). "The test for determining whether an affirmative defense of mistake of fact has been raised is whether the record contains some evidence of an honest and reasonable mistake to which the members could have attached credit if they had so desired." *United States v. Hibbard,* 58 M.J. 71, 75 (C.A.A.F. 2003). Put differently, an instruction on a defense is not required if no reasonable panel member could find the defense applicable. *United States v. Schumacher,* 70 M.J. 387, 389–90 (C.A.A.F. 2011) (stating that the test is similar to the test for legal sufficiency).

---

[4] For example, Article 134, UCMJ proscribes, *inter alia,* "neglect[ful]" conduct which is prejudicial to good order and discipline. *MCM,* pt. IV, ¶ 60.c.(2)(a). On that statutory foundation the President has specified both offenses which require only a negligent mind (e.g. negligent homicide) as well as offenses which require a higher *mens rea* (e.g., Assault with intent to commit murder).

When a defense has more than one element, in order for that defense to be reasonably raised by the evidence there must be some evidence as to *each separate element* of the defense. *Davis*, 75 M.J. at 540-41 (emphasis added). As our superior court stated in *Schumacher,* "…the military judge must answer the legal question of whether there is some evidence upon which members could reasonably rely to find that *each* element of the defense has been established." 70 M.J. at 389–90 (emphasis added).

Thus, in order to put the defense of mistake of fact at issue in this case, there must be: 1) some evidence to which the members could have attached credit that appellant honestly believed he had PV2 JC's permission to enter her room; and 2) some evidence to which the members could reasonably attach credit that such a belief was reasonable. Rule for Courts-Martial [hereinafter R.C.M.] 916(b)(4).

In this case, we do not find any evidence of appellant's subjective belief that he had permission to enter PV2 JC's room. In order to warrant a mistake of fact instruction, there must be "some" evidence of appellant's subjective innocent state of mind. Appellant did not testify at trial. While an accused is not *required* to testify in order to warrant the instruction, *United States v. Jones*, 49 M.J. 85, 91 (C.A.A.F. 1998), there must be some evidence or permissible inference with regards to appellant's honestly held beliefs. Notably, our superior court has determined that evidence that tends to raise some evidence of an objectively reasonable mistake of fact is, alone, *insufficient* to infer that such a mistake was subjectively believed. *United States v. Willis*, 41 M.J. 435, 438 (C.A.A.F. 1995) ("The testimony relied on by appellant tended to show objective circumstances upon which a reasonable person might rely to infer consent. However, they provided no insight as to whether appellant *actually* or *subjectively* did infer consent based on these circumstances.") (emphasis added). As in *Willis*, as there was no evidence of the subjective prong of the mistake of fact defense, the military judge did not err in failing to give the instruction.

Moreover, turning to whether the objective prong of the mistake of fact defense was reasonably raised, we reject appellant's argument that there was some evidence of an objectionably reasonable belief he had permission to enter PV2 JC's room. No reasonable factfinder could infer that PV2 JC's response of, "Okay" to appellant's statement that he would "stop by" created a reasonable belief that a male NCO, at midnight, could use a code to bypass the lock, open the door, and enter the darkened room of a female Private E-2 with whom he had no ongoing professional or social relationship.

### 3. Improper Rebuttal Argument

Appellant also claims the trial counsel made an improper rebuttal argument on findings when he asked the panel to infer guilt from appellant's demeanor while sitting in an interrogation room. We agree with appellant that as there was no

6

objection to the trial counsel's argument at trial, we review for plain error. *See* R.C.M. 919(c).

We also agree with appellant that a video showing him slouching in a chair while waiting to be interviewed is not proper demeanor evidence of guilt. *See United States v. Clark*, 69 M.J. 438, 446 (C.A.A.F. 2011) ("The Fifth Amendment cannot with one hand protect an accused from being compelled to testify and yet with the other hand permit trial counsel to argue that an accused's . . . demeanor in response to an accusation of wrongdoing is tantamount to a confession of guilt."). However, we do not evaluate the contents of trial counsel's argument in isolation. *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) ("[T]he argument by a trial counsel must be viewed within the context of the entire court-martial. The focus of our inquiry should not be on words in isolation, but on the argument as 'viewed in context.'") (citing *United States v. Young,* 470 U.S. 1, 16 (1985)).

During the trial, the government introduced a ten-minute video clip of appellant's interview with CID. In their case-in-chief, the defense admitted the remaining portion of the interrogation video. In total, the video was thirty-nine minutes long.

During their closing argument, the defense asked the panel to question why the government had not offered to show the entire video to specifically look at the demeanor of appellant.

> Now let me address the video here for just a minute. I have no idea why the government only wanted to show you ten minutes of it. We thought it was important to show you the entire thing because the characterization by the government is that [appellant] lied during that interrogation about where he actually laid a hand on Private [JC].

You saw what he said, and you saw his demeanor. He didn't lie.

The defense counsel then went on to give specific examples of appellant's demeanor during the interview that he argued were indicative of appellant being honest. In rebuttal, the government addressed the defense counsel's argument:

> Let the government be very clear, the reasons we didn't play the 39 minute videotape is because we all expect the professionals you are, you'll watch the whole thing. Did it really seem like we were trying to hide something the first painfully long 20 minutes where he was just sitting there. And when you relook at that video, you know what . . . you want to look for? Look at when he's not talking.

7

> Look at what [sic] Special Agent [H] isn't there.  And we
> have some picture. [5] [sic]
>
> What does that tell you?  What's his demeanor like?
> What's his bodily language telegraphing throughout the
> whole thing, especially when Special Agent [H] leaves the
> room?  Come on, is that an innocent person?  Is it really?

Taken in context of the court-martial, we find that the trial counsel's argument was directly in response to the defense counsel's argument.  That is, the trial counsel was rebutting the relevance of the first portion of the video (where appellant was primarily sitting alone) and sought to rebut the defense's arguments regarding demeanor.  That is, the trial counsel did not argue that appellant's demeanor while sitting alone was evidence of guilt, but was rebutting any argument that it was evidence of innocence.  However, even assuming that such argument was error, it did not amount to plain error.[6]

In *Clark*, for example, our superior court did not find plain error when the trial counsel referred in argument to the accused's demeanor when declining to answer a question; a situation directly implicating the 5th Amendment.  *Clark*, 69 M.J. at 446  ("The rhetorical questions employed by trial counsel in each case clearly suggested to the panel that an innocent person would have said something; therefore, the accused's silence was being used as evidence of guilt.  Indeed, trial counsel stated that Appellant's demeanor was "*body language* [that] is *just as powerful as [a] verbal confession[ ]."*) (emphasis and alterations in original).

### 4. Multipliciousness

Finally, we address appellant's argument that, as charged, the offense of assault consummated by battery is a lesser included offense of abusive sexual contact and is therefore multiplicious.  Again, as there was no objection at trial, we review for plain error.  *United States v. Payne*, 73 M.J. 19, 23-24 (C.A.A.F. 2014).  "Under a plain error analysis, the accused 'has the burden of demonstrating that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially

---

[5] In his brief, appellant asserts that during the trial counsel's argument the trial counsel displayed for the panel a screenshot of appellant slouching in a chair.  A copy of the presentation given by the trial counsel was marked as an appellate exhibit and includes such a picture.

[6] Given a timely objection, the record would have been clear, and the military judge could have instructed the panel to ignore any improper argument.  The plain error standard incentivizes a party to object at trial, create a developed record, and then either have the error corrected at the trial level or have the error preserved for appeal.

prejudiced a substantial right of the accused.'" *United States v. Tunstall,* 72 M.J. 191, 193–94 (C.A.A.F. 2013) (quoting *United States v. Girouard,* 70 M.J. 5, 11 (C.A.A.F. 2011)).

Appellant fails to meet his plain error burden as his brief cites no authority and makes no argument. That is, on this issue, the brief contains nothing other than the assignment of error. While this type of "headnote" pleading is not *per se* impermissible, it may be unwise when the appellant faces the high burden of establishing both clear error and prejudice. While we reach the error in this case under our "highly discretionary" authority under Article 66(c), UCMJ, to notice waived and forfeited error, *United States v. Butcher*, 56 M.J. 87, 93 (C.A.A.F. 2001), future counsel should not assume that this discretionary authority will always be exercised.

Whether one offense is a lesser included offense of another offense is a question of law which we review *de novo. Tunstall,* 72 M.J. at 193. Article 79, UCMJ, permits an accused to "be found guilty of an offense necessarily included in the offense charged." This Article provides the statutory authority for a military judge to convict of, and an appellate court to affirm, a lesser included offense. *United States v. Girouard,* 70 M.J. 5, 9 (C.A.A.F. 2011). The elements test determines whether one offense is a lesser included offense of another. *United States v. Jones,* 68 M.J. 465, 470 (C.A.A.F. 2010).

> This test compares the elements of each offense as follows: If all of the elements of offense X are also elements of offense Y, then X is [a lesser included offense] of Y. Offense Y is called the greater offense because it contains all of the elements of offense X along with one or more additional elements.

*Tunstall,* 72 M.J. at 194 (quoting *Jones,* 68 M.J. at 470).

There is no requirement "'that the two offenses at issue employ identical statutory language.'" *United States v. Bonner,* 70 M.J. 1, 2 (C.A.A.F.2011) (quoting *United States v. Alston,* 69 M.J. 214, 216 (C.A.A.F.2010)). Courts instead apply normal rules of statutory interpretation and construction to "'determine whether the elements of the [lesser included offense] would necessarily be proven by proving the elements of the greater offense.'" *United States v. Gaskins,* 72 M.J. 225, 235 (C.A.A.F.2013) (quoting *United States v. Wilkins,* 71 M.J. 410, 412 (C.A.A.F.2012)). In making this lesser included offense determination, courts examine the offense "in the context of the charge at issue." *Alston,* 69 M.J. at 216. The elements test provides "notice to [an accused] that he may be convicted" of the greater offense or the lesser included offense. *Schmuck v. United States,* 489 U.S. 705, 718 (1989). In several cases our superior court has stated that a lesser included offense "meets this notice requirement if 'it is a subset of the greater offense

alleged.'" *See, e.g., Jones,* 68 M.J. at 468. (quoting *United States v. Medina,* 66 M.J. 21, 27 (C.A.A.F.2008)); *see also Gaskins,* 72 M.J. at 235; *Bonner,* 70 M.J. at 2; *Alston,* 69 M.J. at 216. This notice is critical because "[t]he due process principle of fair notice mandates that 'an accused has a right to know what offense and under what legal theory' he will be" tried and convicted." *Jones,* 68 M.J. at 468 (quoting *Medina,* 66 M.J. at 26).

The elements of assault consummated by a battery are:

(1) That the accused did bodily harm to a certain person;[7] and

(2) That the bodily harm was done with unlawful force or violence.[8]

*MCM,* pt. IV, ¶ 54.b.(2); *see also Bonner,* 70 M.J. at 3.

The elements of abusive sexual contact as charged in this case are:

(1) The accused committed a sexual contact upon another person; and

(2) The sexual contact was accomplished by bodily harm.

*See MCM,* pt. IV, ¶ 45.a.(d); *MCM,* A28-8; ¶ 45.b.(8)(b). *See also* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 3-45-16*c.*

In this case, the contact that constituted the battery (touching PV2 JC's shoulders and back) was the exact same contact that constituted the abusive sexual contact.[9] That is, appellant was charged with inflicting bodily harm on PV2 JC with a sexual intent. Our superior court has already found that assault consummated by a battery is a lesser-included offense under nearly identical circumstances. *United States v. Bonner*, 70 M.J. 1 (C.A.A.F 2011); *cf. United States v. Riggins*, 75 M.J. 78,

---

[7] "[B]odily harm" is "'any offensive touching of another, however slight.'" *Bonner,* 70 M.J. at 3 (quoting *United States v. Johnson,* 54 M.J. 67, 69 (C.A.A.F.2000)); *see also MCM,* pt. IV, ¶ 54.c.(1)(a).

[8] "Unlawful force or violence means that the accused wrongfully caused the contact, in that no legally cognizable reason existed that would excuse or justify the contact." *Bonner,* 70 M.J. at 3.

[9] The government alleged a sexual contact as defined by Article 120(g)(2)(B), UCMJ ("any touching . . . either directly or through the clothing, *any body part* of any person, if done with an intent to arouse or gratify the sexual desire of any person."). (emphasis added).

84-85 (C.A.A.F. 2016) (finding assault consummated by battery is not a lesser included offense of abusive sexual contact caused by fear). Accordingly, we find that assault consummated by battery is a lesser included offense of abusive sexual contact caused by bodily harm and shall provide relief in our decretal paragraph.[10]

**CONCLUSION**

The findings of guilty to the Specification of Charge IV and Charge IV are set aside and DISMISSED. The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the relief granted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). We are confident that based on the entire record and appellant's course of conduct, the panel would have imposed a sentence of at least that which was adjudged. In conducting this analysis, we note that the military judge instructed the panel to treat the offenses of abusive sexual contact, assault consummated by a battery, and maltreatment as one for purposes of sentencing. Setting aside the Specification of Charge IV and Charge IV does not change the penalty landscape. The remaining offenses are of the type that members of this court have the experience and familiarity to reliably determine the sentence that would have been imposed at trial. Accordingly, the sentence is AFFIRMED.

Senior Judge HAIGHT and Judge PENLAND concur.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court

---

[10] Our decision here is limited to circumstances where the touching alleged in the sexual contact is the same touching that is alleged in the offense of assault consummated by battery. That is, we do not address a circumstance where an assault consummated by battery (e.g. a slap) is alleged to have caused a subsequent (and different) sexual contact (e.g. touching a breast).