*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

## UNITED STATES
Appellee

**v.**

## Jonel H. GUIHAMA, Master Sergeant
United States Air Force, Appellant

**No. 23-0085**
Crim. App. No. 40039

Argued February 7, 2024—Decided August 14, 2024

Military Judges: Jennifer E. Powell (motions) and
Colin P. Eichenberger (trial)

For Appellant: *Catherine M. Cherkasky*, Esq. (argued); *Major Heather M. Caine* (on brief).

For Appellee: *Colonel Zachary Eytalis* (argued); *Colonel Matthew D. Talcott*, *Lieutenant Colonel James P. Ferrell*, and *Mary Ellen Payne*, Esq. (on brief).

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, and Judge JOHNSON joined. Judge MAGGS filed a separate opinion concurring in part and in the judgment.

———————

Judge HARDY delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted Appellant of, among other offenses, aggravated sexual abuse of his nephew on divers occasions, and aggravated sexual contact upon his niece in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2006 & Supp. IV 2007-2011). Those convictions stemmed from statements Appellant made to federal agents in which he admitted to fondling his niece and nephew. At trial, Appellant moved to suppress those statements on the basis that they were not adequately corroborated by independent evidence as required by Military Rule of Evidence (M.R.E.) 304(c). The miliary judge denied Appellant's motion, and the United States Air Force Court of Criminal Appeals (AFCCA) affirmed. We granted review to determine whether the military judge abused her discretion by admitting Appellant's confession.

Although the military judge abused her discretion with respect to her reliance on certain evidence, she did not abuse her discretion with respect to her ultimate conclusion that sufficient independent evidence tended to establish the trustworthiness of Appellant's statements as required by M.R.E. 304(c)(1). Accordingly, we affirm the decision of the AFCCA.

## I. Background

In 2018, the FBI suspected that Master Sergeant Jonel Guihama (Appellant) was receiving and sharing child pornography online. Agents from the Federal Bureau of Investigation (FBI) and Air Force Office of Special Investigations (AFOSI) conducted an early morning raid at Appellant's house and executed a search warrant for his digital devices, electronic storage media, and associated items. The agents arrested Appellant, placed him in a government vehicle outside of his residence, and advised him of his *Miranda* rights,[1] which he waived. The forensic analysis that was

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

later conducted on the digital devices that were seized during the raid revealed that Appellant possessed thousands of pornographic pictures and videos of underage boys and girls.

## A. Interviews with Appellant

Law enforcement agents first started questioning Appellant while he was handcuffed and seated in the government vehicle. Appellant admitted that he was involved in group chats where he shared links of naked boys and girls. When asked if he spent a lot of time around kids, Appellant replied that he did not have his own children but that he did have nieces and nephews. Appellant denied ever having put his hands on a child in a sexual way, but the questioning agent later testified that while Appellant was being asked about whether he had ever inappropriately touched children, "it looked . . . like he was going to start crying" and "his mouth was trembling a bit and his eyes got kind of red and watery." Near the conclusion of the interview in the government vehicle, Appellant consented to take a polygraph examination at an AFOSI detachment.

At the conclusion of the polygraph, the agent conducting the exam told Appellant that the examination "did not go like I was hoping it was going to go" because "Appellant was clearly responding to some questions regarding sexual contact with a minor." Appellant initially remained steadfast that he had never inappropriately touched a child, but during the course of continued questioning, he admitted to touching minors in an inappropriate way on various occasions.

Appellant described—to the best of his memory—an incident that occurred approximately seven years earlier in about 2011 while he was stationed in Texas but was visiting his wife's family in Missouri. Appellant explained how he and his two nieces and nephew fell asleep on the floor of his in-law's living room while watching movies. Appellant admitted that he fondled his nephew—who was twelve or thirteen at the time—when his nephew fell asleep. Appellant said that his nephew did not wake up during the

incident and had "[n]o clue" that anything had happened to him while he was sleeping. As the interview continued, Appellant admitted that he also fondled his preteen niece as she slept on the living room floor. Like her brother, Appellant said that his niece was asleep during the incident and did not "see or notice anything."

After describing the incidents with his niece and nephew to the agent, Appellant reconsidered the timing and speculated that the incidents must have occurred when he returned from deployment in January or February of 2011. When the agent pressed for more information, Appellant admitted that he fondled his nephew again in 2012 in the same way as before, after the boy fell asleep watching a movie at his residence in Missouri.

## B. Motion to Suppress

Before arraignment, Appellant moved to suppress his statements about touching his nephew and niece in a sexual manner on the basis that the statements were not sufficiently corroborated by independent evidence under M.R.E. 304(c). In response, the Government pointed to statements made by Appellant's family members during sworn preliminary hearing testimony and AFOSI interviews as well as other supporting documentary evidence. The Government argued that this evidence established the trustworthiness of Appellant's statements by verifying the essential facts, including the identities of the alleged victims and the circumstances, timing, and location of the alleged assaults.

Appellant's sister-in-law confirmed that she had two daughters and one son whose ages were consistent with Appellant's statement to law enforcement. She also clarified that she and her family lived in Texas until her family moved to Missouri in 2012 during her overseas deployment. She verified that Appellant and his wife would frequently visit them in Texas and would occasionally stay overnight. She said that when the families got together, the children slept in the living room where they would watch movies before falling asleep. Appellant's sister-in-law did

not know whether Appellant ever joined the kids when they watched movies, but she assumed that he did.

Appellant's brother-in-law recalled that Appellant came to visit in Missouri on two occasions. On his first visit in May 2013, Appellant slept in the living room with the children. But Appellant's brother-in-law could not remember the dates or sleeping arrangements of Appellant's second visit.

Appellant's nephew remembered that his uncle visited him frequently in Texas, but he had no recollection of Appellant ever visiting him in Missouri. The nephew confirmed that he, along with his two sisters, would fall asleep while watching movies. Although his memory was not clear, the nephew believed that it was possible that Appellant joined them. The nephew also recognized the possibility that Appellant watched movies and slept in the living room with the children while no other adults were present. The nephew had no memory of Appellant sexually abusing him.

Appellant's older niece also had no memory of Appellant touching her inappropriately. But this niece did confirm that Appellant would often visit when she lived in Texas, and that Appellant, along with his wife, would frequently join her and her siblings to watch movies in the living room. But the older niece did not remember Appellant ever visiting her family when they lived in Missouri. The military judge found, however, that Appellant's younger niece distinctly remembered sleeping in the living room in Missouri with her older siblings and Appellant.

In addition to the testimony from Appellant's family, the Government also offered Appellant's military travel and leave records to corroborate Appellant's statements. For example, a travel voucher indicated that Appellant redeployed to Dyess Air Force Base in Texas in January 2011, and other records showed that Appellant took leave multiple times in 2011, 2012, and 2013.

Based on this evidence, the military judge concluded that Appellant's statements about touching his niece and

nephew in a sexual manner were sufficiently corroborated to satisfy the requirements of M.R.E. 304(c). Importantly for the purpose of this appeal, the military judge rejected Appellant's argument that his niece's and nephew's lack of memory of any sexual touching undermined the trustworthiness of Appellant's admission. To the contrary, the military judge concluded that the alleged victims' lack of memory might justify an inference that Appellant's statements were true given that Appellant had been adamant that both children were asleep when Appellant touched them. Based on this and the other independent evidence presented by the Government, the military judge denied Appellant's motion to suppress, and Appellant's statements were admitted at trial.

## C. Trial and Appeal

A general court-martial composed of a military judge sitting alone convicted Appellant, contrary to his pleas, of possessing, viewing, and distributing child pornography, in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2012). Appellant was also convicted, contrary to his pleas, of aggravated sexual abuse of his nephew on divers occasions, and aggravated sexual contact upon his niece in violation of Article 120, UCMJ. The military judge sentenced Appellant to confinement for ten years, forfeiture of all pay and allowances, reduction to the grade of E-1, and a dishonorable discharge.

Before the AFCCA, Appellant argued that the military judge abused her discretion in denying the defense's motion to suppress Appellant's confession because it was not sufficiently corroborated as required by M.R.E. 304(c)(1). *United States v. Guihama*, No. ACM 40039, 2022 CCA LEXIS 672, at *2, 2022 WL 17078714, at *1 (A.F. Ct. Crim. App. Nov. 18, 2022) (unpublished). In response, the Government relied on the same evidence that it presented to the military judge and also offered, for the first time on appeal, two additional pieces of evidence as corroboration. *Id.* at *61, 2022 WL 17078714, at *20. First, that the "vast amount of child pornography" found on Appellant's electronic devices "confirmed his sexual interest in children

and motive to commit the offenses" against his niece and nephew. *Id.*, 2022 WL 17078714, at \*20 (internal quotation marks omitted). And second, that Appellant's emotional response to the FBI's questions about whether he had ever touched a child—looking like he was going to cry, his mouth trembling, and his eyes getting red and watery—was evidence of his consciousness of guilt. *Id.*, 2022 WL 17078714, at \*20.

The AFCCA declined to address whether Appellant's motive and intent to fondle his niece and nephew could be shown by evidence of his possession of child pornography. *Id.* at \*65-67, 2022 WL 17078714, at \*21-22. But the AFCCA did conclude that Appellant's emotional reaction during questioning was independent evidence that could bear on the sufficiency of the corroboration. *Id.* at \*67, 2022 WL 17078714, at \*22.

Next, the AFCCA concluded that each piece of independent evidence raised an inference of the truth of Appellant's confessions.[2] *Id.* at \*67-70, 2022 WL 17078714, at \*23. With respect to the children's lack of memory, the AFCCA agreed with the military judge that their lack of awareness " 'may justify a jury's inference that [Appellant]'s statements were true given the specific way the accused claims to have committed the charged offenses' " because Appellant's niece and nephew did not wake up when he allegedly fondled them. *Id.* at \*69, 2022 WL 17078714, at \*23 (alteration in original). The AFCCA also held that Appellant's visibly emotional response to questions about inappropriately touching children "permitted the inference

---

[2] The AFCCA was unconcerned with the discrepancies between when and where Appellant said the fondling incidents occurred and the testimony offered by his family as to the dates and locations of his visits. It stated that "the circumstances of these visits—wherever and whenever they occurred—show that Appellant had access to his nephew and niece and raise an inference of the truth of Appellant's admissions." *Guihama*, 2022 CAAF LEXIS 672, at \*67-68, 2022 WL 17078714, at \*23.

that he had touched a child in such a manner." *Id.*, 2022 WL 17078714, at \*23.

Finally, the AFCCA concluded that the military judge did not abuse her discretion in applying the third step under *United States v. Whiteeyes*, 82 M.J. 168, 174 (C.A.A.F. 2022), because the pieces of independent evidence, considered together, tended to establish the trustworthiness of Appellant's confession. *Id.* at \*70-72, 2022 WL 17078714, at \*23-24. We granted review of the following issue:

> Whether the military judge abused her discretion by admitting a confession that was not trustworthy because it lacked sufficient corroboration.

*United States v. Guihama*, 83 M.J. 454 (C.A.A.F. 2023) (order granting review).

## II. Discussion

M.R.E. 304(c)(1) provides that "[a]n admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been admitted into evidence that would tend to establish the trustworthiness of the admission or confession." The rule further states that "[t]he independent evidence necessary to establish corroboration need not be sufficient of itself to establish beyond a reasonable doubt the truth of facts stated in the admission or confession. The independent evidence need only raise *an inference of the truth* of the admission or confession." M.R.E. 304(c)(4) (emphasis added). This Court reviews a military judge's decision to admit a statement under M.R.E. 304(c) for an abuse of discretion. *United States v. Jones*, 78 M.J. 37, 41 (C.A.A.F. 2018).

Although the military justice system first adopted a confession-corroboration rule in 1969,[3] the President

---

[3] *See Manual for Courts-Martial, United States*, para. 140*a*(5) (1969 rev. ed.) (*MCM*) ("It is a general rule that a confession or admission of the accused cannot be considered as evidence against him on the question of guilt or innocence unless

revised the current version of the rule—now incorporated into the Military Rules of Evidence as M.R.E. 304(c)—in 2016 to "bring[] military practice in line with federal practice." *MCM*, Analysis of the Military Rules of Evidence app. 22 at A22-12 (2016 ed.). In *Whiteeyes*, this Court applied the updated version of M.R.E. 304(c) to determine whether individual pieces of evidence established the trustworthiness of the appellant's confession in that case. 82 M.J. at 174. In doing so, the Court established a three-part test that details the procedures and standards that a military judge must follow when deciding whether an accused's admission or confession is sufficiently corroborated. *Id.* The *Whiteeyes* test closely tracks the language of M.R.E. 304(c) and can be summarized as follows:

First, the military judge must decide whether the proffered evidence is in fact independent evidence. *Id.* Independent evidence cannot consist of other uncorroborated confessions of the accused that would also require corroboration, but independent evidence can be either direct or circumstantial. *Id.* (citing M.R.E 304(c)(1)).

Second, the military judge must decide whether each piece of independent evidence "raises an inference of the truth of the admission or confession." *Id.* (internal quotation marks omitted) (quoting M.R.E. 304(c)(2)). If the piece of evidence meets this threshold, the military judge can use it to determine whether the accused's statement is corroborated. *Id.*

Third, the military judge must decide whether the pieces of evidence, considered together, corroborate the admission or confession of the accused. *Id.* In doing so, the military judge must assess whether the pieces of evidence "would tend to establish the trustworthiness of the admission or confession." *Id.* (citation omitted) (internal quotation mark omitted).

---

independent evidence, either direct or circumstantial, has been introduced which corroborates the essential facts admitted sufficiently to justify an inference of their truth.").

In *Whiteeyes*, the Court also reaffirmed that under the updated version of M.R.E. 304, the quantum of evidence necessary to corroborate an accused's admissions or confession under M.R.E. 304(c) remains "slight." *Id.* at 174 n.6 (citations omitted) (internal quotation marks omitted).

### A. Voluntariness of Appellant's Confession

We begin by addressing Appellant's argument that his confession was not trustworthy because of the context in which it occurred. Appellant argues that his "alleged confession was borne out of hours of manipulative and repetitive questioning in four different locations, amidst dozens of adamant denials, and [it was] the stated intent of the FBI agent to not stop questioning until [Appellant] confessed to a crime of which they admittedly had no other evidence."

If an accused makes a timely motion or objection under M.R.E. 304(a), an involuntary statement will generally be inadmissible at trial.[4] The voluntariness of a confession turns on whether an accused's "will has been overborne." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973) (citation omitted) (internal quotation marks omitted). To make that determination, this Court examines the totality of the surrounding circumstances by "looking to both the personal characteristics of the accused as well as *the circumstances of the interrogation*." *United States v. Nelson*, 82 M.J. 251, 255 (C.A.A.F. 2022) (emphasis added) (citation omitted) (internal quotation marks omitted).

Appellant's claims regarding the environment in which he was questioned and the circumstances that led to his confession would seem to relate to the confession's voluntariness. But as Appellant's trial defense counsel explained at the preliminary hearing on his motion to suppress: "The defense is not claiming that the confession was involuntary. We are saying that it was false and it's not supported by corroboration . . . ." Thus, because Appellant conceded

---

[4] Involuntary statements can be used against an accused only in the rare circumstances provided in M.R.E. 304(e).

that his confession was voluntary and because the granted issue only deals with corroboration, we have no reason to address the length, location, or method of the interrogation. Instead, we focus only on whether Appellant's statements that he fondled his niece and nephew were sufficiently corroborated in accordance with *Whiteeyes*.

### B. *Whiteeyes* Analysis

### 1. Independent Evidence

Under the first *Whiteeyes* step, we must decide whether the evidence proffered by the Government is in fact "independent evidence." 82 M.J. at 174 (citation omitted) (internal quotation marks omitted). The corroborative evidence that the Government presented to the military judge included statements obtained from AFOSI interviews with the named victims and Appellant's in-laws, preliminary hearing testimony, and Appellant's military records. Because none of this evidence consists of other uncorroborated confessions or admissions made by Appellant that would themselves require corroboration, the military judge did not err in ruling that each piece was independent. For the same reason—and because independent evidence can be direct or circumstantial—the AFCCA did not err by labeling Appellant's emotional reaction to the FBI questioning as independent evidence that could bear on the sufficiency of corroboration.

### 2. Inference of the Truth

The second *Whiteeyes* step instructs military judges to determine whether each piece of independent evidence "raises an inference of the truth of the admission or confession." *Id.* (citation omitted) (internal quotation marks omitted). Only if it meets this threshold test can the military judge then use that evidence to determine whether the accused's statement is corroborated. *Id.* The government does not face a weighty burden at this step. The standard to raise an inference of a confession's truth is only marginally higher than the standard necessary to show that evidence is relevant.

Only relevant evidence is admissible at courts-martial. M.R.E. 402(b); *United States v. Hendrix*, 76 M.J. 283, 289 (C.A.A.F. 2017). To be relevant, evidence need only have "any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action." M.R.E. 401(a)-(b). "The relevance standard is a low threshold." *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (citing *United States v. Reece*, 25 M.J. 93, 95 (C.M.A. 1987)).

Evidence at the second *Whiteeyes* step must be more than just relevant. Instead of just having a *tendency* to raise an inference of a confession's truth, it must *actually* raise an inference of its truth. If a piece of evidence does not actually raise an inference of the confession's truth, then the military judge cannot use it for corroboration purposes. While the difference between the two standards is small, we underscore the variance to point out that not all evidence that meets the relevancy standard qualifies at *Whiteeyes* step two. Thus, we review the independent evidence that the Government presented to see if each piece in fact infers that Appellant fondled his niece and nephew.

### a. Appellant's emotional reaction

The AFCCA concluded that Appellant's emotional response following the FBI's questions about sexually touching children raised an inference of the truth of his confession. Before us, the Government contends that Appellant's emotional reaction was a nontestimonial act that tended to show his consciousness of guilt for fondling his niece and nephew. We disagree.

Appellant's emotional reaction does not raise an inference of the truth of his confession because it is susceptible to multiple explanations. Appellant's vague and subtle response—starting to cry, a trembling mouth, and red, watery eyes—might have indicated consciousness of guilt, but it just as easily could have indicated something else. *See United States v. Clark*, 69 M.J. 438, 445 n.1 (C.A.A.F. 2011) ("Subtle physical demeanor is not admissible as relevant to an accused's consciousness of guilt, because it is equally

susceptible to other inferences." (citing *United States v. Cook*, 48 M.J. 64, 67 (C.A.A.F. 1998))). For example, Appellant might have simply begun to realize the gravity of his situation. The reaction occurred just after his home had been raided by federal agents, while he was sitting handcuffed in a government vehicle being asked about child pornography and unlawful acts with children. More importantly, if Appellant had never touched a child, being suspected of doing so by the federal agents might have triggered the response. Because we do not find Appellant's reaction to be a reliable indication of consciousness of guilt, it does not raise an inference of the truth of Appellant's admissions. We therefore decline to use that evidence to determine whether Appellant's admissions were sufficiently corroborated.

### b. Alleged victims' lack of memory

The AFCCA also agreed with the military judge that Appellant's niece's and nephew's lack of any knowledge or memory of Appellant's actions raised an inference of the truth of his admissions. The lower court found that the children's lack of awareness " 'may justify a jury's inference that [Appellant]'s statements were true given the specific way the accused claims to have committed the charged offenses.' " *Guihama*, 2022 CCA LEXIS 672, at *69, 2022 WL 17078714, at *23 (alteration in original). Essentially, the AFCCA agreed with the military judge that because the children's recollections were consistent with Appellant's description of his acts, their statements corroborated his admissions. We conclude, however, that the military judge abused her discretion in reaching this finding.

Whether or not Appellant committed the acts as he described, the children would have no memory of being assaulted either way. If Appellant's admissions are true, the children would have been asleep and would have been unaware of Appellant's acts. If his admissions are false, then the events never happened, and the children also would not have memory of his acts. Because the children's statements to the agents would have been the same whether

13

Appellant's confession was true or false, they do not raise an inference of the truth of Appellant's admissions.

Relying on *United States v. Seay*, 60 M.J. 73 (2004), the Government argues that an absence of a fact may help corroborate a confession. In *Seay*, the Court held that the truth of an accused's confession to participating in the larceny of a murder victim's wallet could be inferred from the fact that "the victim named in the confession knew the appellant, died as a result of foul play, was found in a concealed place, and did not have a wallet at the time or thereafter." *Id.* at 80. We decline to extend the reasoning in *Seay* to the facts of this case. Knowledge of the absence of the murder victim's wallet—an item that adults routinely and habitually carry—differs significantly from children having no memory of being inappropriately touched by their uncle. It is reasonable to expect that individuals would typically be in possession of their wallet. So, when a murder victim's body is found without one, it can be inferred that the suspect who confessed to the act is telling the truth when the suspect knows that the victim's wallet is missing. In sharp contrast, an adult's participation in lewd conduct with a sleeping child is, thankfully, a rare occurrence. It was therefore an abuse of discretion for the military judge to use Appellant's niece's and nephew's absence of knowledge to infer that Appellant did in fact fondle them while they slept.[5]

---

[5] We also decline to use the child pornography found on Appellant's phone to corroborate his confession. For the first time on appeal, the Government argued that the "vast amount" of pornography that Appellant possessed "confirmed his sexual interest in children and motive to commit the offenses." *Guihama*, 2022 CCA LEXIS 672, at *61, 2022 WL 17078714, at *20 (internal quotation marks omitted). But at the motions hearing, the Government only presented this evidence to bolster the trustworthiness of Appellant's confessions. It was not offered in front of the trial court to show Appellant's motive under M.R.E. 404(b)(2). We therefore decline to draw the connection between Appellant's possession of child pornography and his

### c. Remaining independent evidence

We conclude that the military judge did not abuse her discretion in considering the remaining statements made by the named victims and Appellant's in-laws, preliminary hearing testimony, and Appellant's military records. Each piece of evidence allows an inference that Appellant fondled his niece and nephew.

### 3. Trustworthiness of Appellant's Confession

Under the third *Whiteeyes* step, the military judge must decide whether the remaining pieces of evidence, considered together, "corroborate the accused's admission or confession." 82 M.J. at 174. In doing so, the military judge must assess whether the pieces of independent evidence "would tend to establish the trustworthiness of the admission or confession." *Id.* (citation omitted) (internal quotation marks omitted). We conclude that the military judge did not abuse her discretion because the remaining evidence sufficiently corroborated Appellant's confession.

In 2015, Congress directed the President to modify M.R.E. 304(c), to the extent he considered practicable, "to conform to the rules governing the admissibility of the corroboration of admissions and confessions in the trial of criminal cases in the United States district courts." National Defense Authorization Act for Fiscal Year 2016, Pub. L. No. 114–92, § 545, 129 Stat. 726, 820 (2015). In the federal civilian courts, corroboration has consistently been an easy bar for the government to clear. "[C]orroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance . . . ." *Smith v. United States*, 348 U.S. 147, 156 (1954). "Independent evidence adequately corroborates a confession if it 'supports the essential facts admitted sufficiently to justify a jury inference of their truth.'" *United States v. Abu Ali*, 528 F.3d 210, 235 (4th Cir. 2008) (quoting *Opper v. United States*, 348 U.S. 84, 93 (1954)); *see also Wong Sun v. United States*,

---

motive to commit child molestation where no testimony or evidence was presented at trial to establish such a connection.

371 U.S. 471, 489 (1963) (stating "extrinsic proof [i]s sufficient which merely fortifies the truth of the confession, without independently establishing the crime charged" (internal quotation marks omitted)). Independent evidence need not be "overwhelming" to achieve corroboration, but it must only support the truthfulness or reliability of the confession. *United States v. Taylor*, 802 F.2d 1108, 1116-17 (9th Cir. 1986).

Our predecessor court noted that "[a]lthough no mathematical formula exists to measure sufficient corroboration, our review of the federal court decisions . . . leads us to conclude that the amount of corroboration generally needed is not great." *United States v. Melvin*, 26 M.J. 145, 146 (C.M.A. 1988). Based on this review, our predecessor concluded that "the amount needed in military courts may be very slight." *Id.* This Court's recent decision in *Whiteeyes* reaffirmed that the President's 2016 revisions to M.R.E. 304(c) did not materially alter this low standard. 82 M.J. at 174 n.6. We believe that even without considering the children's lack of memory or Appellant's emotional response while being questioned, that low bar was cleared here.

Independent evidence establishes that: (1) Appellant had a niece and nephew whose ages at the time the alleged incidents took place were consistent with the ages that Appellant provided to the FBI; (2) Appellant visited his wife's family during the time frame that he said he committed the offenses; (3) records show that Appellant was authorized to take leave at times where he lived close to his wife's family and could visit them; and (4) Appellant's niece and nephew recalled watching movies with Appellant in the living room of their home and then falling asleep. This evidence put Appellant in the place that he claimed to have committed the crimes, with the children whom he claimed to have victimized, and shows that he had the opportunity to commit the crimes in the very specific way that he described.

The minor discrepancies between the children's testimony and Appellant's confessions—such as the exact dates and locations of his visits that had occurred years earlier—

do not change that Appellant's family confirmed that he watched movies with his underage nieces and nephew while they fell asleep. Taken together, the independent evidence meets the low corroboration standard because it tends to establish the trustworthiness of Appellant's admissions. Accordingly, the military judge did not abuse her discretion in finding corroboration and allowing Appellant's admission to be used against him at trial.

## III. Conclusion

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Judge MAGGS, concurring in part and concurring in the judgment.

I join the Court's opinion except for parts II.B.2.*a.* and II.B.2.*b.* I do not join those two parts because they involve difficult issues that the Court need not decide in this appeal. Military Rule of Evidence 304(c)(1) provides that "[a]n admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence . . . has been admitted into evidence that would tend to establish the trustworthiness of the admission or confession." The Court correctly determines that ample independent evidence—namely, interview statements, preliminary hearing testimony, and Appellant's military records—supports an inference of the truth of Appellant's admissions in this case. Accordingly, it does not matter whether the additional evidence that the Court discusses at length in parts II.B.2.*a.* and II.B.2.*b.* also supports, or does not support, an inference of the truth of Appellant's admissions. I therefore respectfully concur in the opinion in part and in the judgment.